UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WG WOODMERE LLC; SG BARICK LLC; AND LH
BARICK LLC,

                       *Plaintiffs*,

    -against-

THE INCORPORATED VILLAGE OF WOODSBURGH;
AND THE INCORPORATED VILLAGE OF
LAWRENCE,

                       *Defendants*.

23-CV-6966 (ARR) (AYS)

OPINION & ORDER

ROSS, United States District Judge:

In this action alleging violations of federal and state law in connection with the rezoning of a property located in Woodmere, New York, I have before me two fully briefed motions to dismiss: one made by defendant Incorporated Village of Woodsburgh ("Woodsburgh"), and the second by defendant Incorporated Village of Lawrence ("Lawrence"). *See* ECF Nos. 37–42. Defendants argue that plaintiffs' claims should be dismissed because they are not ripe, because they fail to state a claim, or because plaintiffs failed to join the Town of Hempstead, which defendants contend is a necessary party to the litigation.

Having reviewed the complaint and the parties' briefing on the instant motion, I grant defendants' motion in part and deny it in part. Specifically, I grant defendants' motion to dismiss with respect to plaintiffs' equal protection, due process, and bill of attainder claims (the first, fifth, sixth, and tenth causes of action), as well as one of their state law claims (the ninth cause of action). I further grant defendants' motion to dismiss plaintiffs' remaining state law claims (the seventh and eighth causes of action) without prejudice, so that plaintiffs may, if they desire, renew these claims after seeking and obtaining leave to file a late notice of claim in state court. I deny

defendants' motion to dismiss as to plaintiffs' takings claims (the second, third, and fourth causes of action). The pending motion for a stay of discovery, *see* ECF No. 28, is denied as moot.

## BACKGROUND

### *Factual Background*

I assume the parties' familiarity with plaintiffs' complaint, which provides the factual context for this action at this stage. The following facts, which are particularly relevant to the present motion, are drawn from plaintiffs' complaint and presumed to be true. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

In 2017, plaintiffs acquired a 118-acre parcel of land, located at 99 Meadow Drive, in Woodmere, New York. Compl. ¶¶ 96, 98, ECF No. 1. The property, known as the "Woodmere Club," operated for decades as a private country club offering golf, tennis, swimming, and other amenities. *Id.* ¶ 98. The Woodmere Club property is in the jurisdiction of three municipalities: approximately 55 acres are under the jurisdiction of the Town of Hempstead, 40.5 acres are in the Village of Woodsburgh, and 22.9 acres are in the Village of Lawrence. *Id.* ¶ 100. Because of the property's location, it is subject to the planning authority of the municipalities as well as the Nassau County Planning Commission ("NCPC"). *Id.* ¶ 101. Under New York state and county law, the NCPC has primary jurisdiction over subdivision review of the Woodmere Club property. *Id.* ¶¶ 63, 65–69. At the time plaintiffs purchased the property, the then-applicable zoning regulations allowed for development of a subdivision plan consisting of 284 single-family residential lots, with 248 in Hempstead, 24 in Woodsburgh, and 12 in Lawrence. *Id.* ¶ 111. In December 2018, plaintiffs filed an application with the NCPC for approval to subdivide the property into 284 single family residential lots in compliance with the zoning regulations of the municipalities. *Id.* ¶¶ 190–91. The NCPC approval process included a review under New York's State Environmental Quality

Review Act ("SEQRA"), N.Y. Env't Conserv. Law §§ 8-0101–8-0117 (McKinney 2024). Compl. ¶ 195. The NCPC is the "Lead Agency" for purposes of the SEQRA review process, and the Woodmere Club property is subject to "the most detailed and extensive form of environmental review provided by law." *Id.* ¶ 196. Plaintiffs have expended approximately $2.2 million in fees and expenses associated with the NCPC application. *Id.* ¶¶ 213–14.

The local governments with jurisdiction over the property have long resisted plaintiffs' development plans. In late 2016, before plaintiffs bought the property, the Hempstead Town Board imposed a temporary moratorium on residential development of golf course properties located within 500 feet of an incorporated village. *Id.* ¶ 113. Hempstead proceeded to extend the moratorium six times. *Id.* ¶ 126. Following plaintiffs' purchase of the property, Woodsburgh imposed its own moratorium on subdivision approval. *Id.* ¶¶ 133–34. Plaintiffs challenged both moratoria in state court; after the New York Supreme Court invalidated Hempstead's moratorium as an unconstitutional taking, Woodsburgh agreed to let its moratorium expire. *Id.* ¶¶ 140–41. Following the demise of its moratorium, Hempstead considered a new zoning proposal in 2018— the "GC Golf Course Coastal Residence District." *Id.* ¶ 145. This proposed zone, which would have also applied to two other waterfront golf courses, would have almost tripled the required minimum lot size and reduced the number of developable lots accordingly. *Id.* ¶ 149. Hempstead ultimately abandoned the proposal in the face of public opposition. *Id.* ¶¶ 158–59, 168–69. Hempstead then considered an alternative plan to use eminent domain to turn the property into a town-owned park, but abandoned that idea when residents indicated they did not support raising taxes to fund the project. *Id.* ¶¶ 172, 186.

Then, in late 2019 and early 2020, as plaintiffs were moving through the SEQRA process before the NCPC, defendants Lawrence and Woodsburgh, together with the Town of Hempstead,

3

entered into an Intermunicipal Cooperation Agreement ("IMA") to rezone the Woodmere Club property. *Id.* ¶¶ 215–16. Under the IMA, the municipalities agreed to adopt zoning ordinances that, when combined, would impose a single zoning scheme on the property. *Id.* ¶ 217. In May 2020, defendants introduced the zoning scheme, called the "Coastal Conservation District – Woodmere Club" (the "challenged zoning"). *Id.* ¶ 225. The challenged zoning went further than the GC Golf Course Coastal Residence District, restricting residential development in areas of the property that were developable under the earlier plan. *See id.* ¶ 151. Defendants' stated purpose for enacting the Coastal Conservation District – Woodmere Club was:

> [T]o regulate development in the environmentally sensitive coastal areas that span the municipal boundaries of the Town and the contiguous Villages of Lawrence and Woodsburgh, including the area occupied by the former Woodmere Club – allowing for the enhanced preservation and protection of the Town's and neighboring Villages' environmental, coastal, open space and cultural resources and the preservation of the residential neighborhoods.

*Id.* ¶ 230.

The challenged zoning creates three "subdistricts" covering the Woodmere Club property: the Open Space/Recreation Subdistrict ("Open Space District"), the Single-Family Residential Subdistrict ("Residential District"), and the "Clubhouse/Hospitality Subdistrict" ("Clubhouse District"). *Id.* ¶ 235. The Open Space District covers 83.3 acres and limits permitted uses to a private or semi-private golf course or passive parkland. *Id.* ¶¶ 244–45. The challenged zoning requires plaintiffs to install and maintain active flood management equipment in the Open Space District to mitigate flood risk to neighboring properties. *Id.* ¶ 254. The Residential District covers approximately 29.4 acres of the property, almost all of which lies within a flood zone. *Id.* ¶¶ 263, 269. The Residential District significantly reduces the number of lots plaintiffs can develop compared to the prior zoning regulations, from 284 to 59 total, and more specifically from 12 to zero in Lawrence, from 24 to 18 in Woodsburgh, and from 248 to 41 in Hempstead. *Id.* ¶¶ 236–

42. Finally, the Clubhouse District covers 5.7 acres of the property—encompassing the Woodmere Club clubhouse building and its tennis courts, swimming pool, and parking lot—and allows for the development of one building substantially identical to the existing clubhouse building in order to "preserve and enhance the existing clubhouse of the Woodmere Club." *Id.* ¶¶ 279–83.

***Procedural Background***

On August 24, 2020, plaintiffs sued the Town of Hempstead and the Villages of Lawrence and Woodsburgh, seeking redress for alleged violations of the U.S. Constitution, the New York Constitution, and New York law. *See* Compl., *WG Woodmere LLC v. Town of Hempstead* (*Woodmere I*), No. 20-CV-3903 (E.D.N.Y. Aug 24, 2020), ECF No. 1. On December 1, 2022, after considering the report and recommendation issued by Magistrate Judge Anne Y. Shields and defendants' objections thereto, I issued an order dismissing plaintiffs' complaint in *Woodmere I* without prejudice. *Woodmere I*, No. 20-CV-3903, 2022 WL 17359339, at *9 (E.D.N.Y. Dec. 1, 2022). Specifically, I found that plaintiffs' equal protection and takings claims were not yet ripe, *id.* at *4–7, because there was still "significant ambiguity" as to how exactly the challenged zoning would "actually apply" to plaintiffs' property, *id.* at *6. I further held that plaintiffs' due process claims failed for lack of a protected property interest. *Id.* at *8. I also adopted Judge Shields's recommendation to dismiss plaintiffs' state law claims arising under SEQRA and the New York state constitution, and I declined to exercise jurisdiction over plaintiffs' remaining state law claims given the dismissal of all federal claims. *Id.* at *9.

Subsequent to my order in *Woodmere I*, on February 15, 2023, plaintiffs filed applications with the villages of Lawrence and Woodsburgh seeking variances that would allow them to construct homes in the parts of their property where residential development is prohibited by the

challenged zoning. Compl. ¶ 341. Both villages denied these applications, and plaintiffs appealed the denials to each village's respective zoning board of appeals in April 2023. *Id.* ¶ 343.

On September 20, 2023, plaintiffs filed the complaint in the instant action against defendants, the villages of Lawrence and Woodsburgh (but not the Town of Hempstead). The complaint alleges: (1) a denial of equal protection under the federal and state constitutions; (2) a temporary violation of the takings clause of the federal and state constitutions due to undue delay; (3) a permanent violation of the takings clause of the federal and state constitutions due to a taking of property; (4) the imposition of unconstitutional conditions/exactions under the Federal Constitution; (5) a violation of the due process clause of the federal and state constitutions; (6) an unconstitutional bill of attainder under the Federal Constitution; (7) an unlawful and ultra vires exercise of zoning power; (8) an unlawful and ultra vires action in connection with the Clubhouse District; (9) the adoption of local laws inconsistent with SEQRA; and (10) a use of the zoning power in violation of the due process clause of the federal and state constitutions. Compl. ¶¶ 360–475. The federal constitutional claims are brought pursuant to 42 U.S.C. § 1983. *Id.*

In July 2024, defendants both moved separately to dismiss. *See* ECF Nos. 25, 26. They subsequently also filed a motion for a stay of discovery, which remains pending. *See* ECF No. 28. I received the fully briefed motions to dismiss on August 21, 2024. *See* Def. Lawrence's Mot. Dismiss ("Lawrence Mot."), ECF No. 37-7; Def. Woodsburgh's Mot. Dismiss ("Woodsburgh Mot."), ECF No. 40-1; Pls.' Opp'n Mot. Dismiss ("Pls.' Opp'n"), ECF Nos. 38, 41-4;[1] Def. Lawrence's Reply Supp. Mot. Dismiss ("Lawrence Reply"), ECF No. 39; Def. Woodsburgh's Reply Supp. Mot. Dismiss ("Woodsburgh Reply"), ECF No. 42-12.

---

[1] Plaintiffs' opposition brief appears in identical form at both ECF No. 38 and ECF No. 41-4.

**LEGAL STANDARD**

When a motion to dismiss is brought under Rule 12(b)(6), I must liberally construe the claims set forth in the complaint, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). In resolving a motion brought under this rule, I may consider "documents attached to the complaint as an exhibit or incorporated in it by reference [and] matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 555)).

Finally, Rule 12(b)(7) "authorizes dismissal of a pleading for failure to join a party under Rule 19 [of the Federal Rules of Civil Procedure]." The latter rule "sets forth a two-step test." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). "First, the court must determine whether an absent party . . . qualifies as a 'necessary' party under Rule 19(a)." *Id.* If the absent party is not necessary, I "need not decide whether its absence warrants dismissal under Rule 19(b)." *Id.* If, however, the absent party is necessary, and if "joinder of the absent party is not feasible for jurisdictional or other reasons," I "must finally determine whether the party is 'indispensable.'" *Id.* at 725. Then, if the absent party's presence is both necessary and indispensable, I must dismiss the action. *Id.*

## DISCUSSION

### I.   Ripeness

Defendants argue for dismissal of this action on the grounds that plaintiffs' claims are not ripe. As an initial matter, I reiterate that, as I found in my decision dismissing plaintiffs' first suit against defendants, "the specific ripeness requirements applicable to land use disputes are not jurisdictional." *Woodmere I*, 2022 WL 17359339, at *4 (first citing *Horne v. Dep't of Agric.*, 569 U.S. 513, 526 n.6 (2013); and then citing *Sherman v. Town of Chester*, 752 F.3d 533, 545 (2d Cir. 2014)). Therefore, the proper standard for me to apply is that under Rule 12(b)(6): accepting plaintiffs' factual allegations as true and drawing all reasonable inferences in plaintiffs' favor. *Grullon*, 720 F.3d at 139. Considering the facts alleged in the complaint, as well as the exhibits attached to it and additional public records submitted by the parties in the course of briefing the instant motion,[2] I conclude that plaintiffs' claims are now ripe for adjudication.[3]

---

[2] Defendant Woodsburgh argues that I should "disregard new factual allegations" that relate to events that took place following filing of the complaint, asserting that plaintiffs "sought to improperly supplement the record." Woodsburgh Reply at 1. This argument is perplexing because it was in fact defendant Lawrence who first brought these facts to my attention, in exhibits attached to its motion to dismiss. *See* Lawrence Mot., Exs. C–E, ECF Nos. 37-4, 37-5, 37-6. In any event, I can and do consider the facts referred to in Exhibits C, D, and E attached to Lawrence's motion, as these are all "public records of which a court may properly take judicial notice." *Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013).

[3] Because plaintiffs brought this suit alleging, in part, that "Defendants' actions violate the constitutional takings clauses both as applied and on their face," Compl. ¶ 384, arguably, the ripeness requirements under *Williamson County* do not even apply to this action. *See Yee v. City of Escondido, Cal.*, 503 U.S. 519, 533 (1992). For this reason, I ordered the parties to "discuss how the court should address these two types of constitutional challenges" in their briefing. Dkt. Order (June 5, 2024). As plaintiffs note, defendants did not address this issue in their papers. *See* Pls.' Opp'n at 26 n.13. In any event, because I conclude the *Williamson County* ripeness requirements are met here, I need not decide whether plaintiffs have successfully made out a facial takings challenge to the challenged zoning.

There is no dispute that, in land use cases such as this one, a plaintiff's claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, 588 U.S. 180 (2019). But, as the Supreme Court has explained, "[t]he finality requirement [under *Williamson County*] is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Pakdel v. City and Cnty. of San Francisco*, 594 U.S. 474, 478 (2021) (alterations adopted and internal quotation marks omitted).  At the time of my decision in *Woodmere I*, I concluded that plaintiffs' claims were unripe because defendants had not yet reached a final decision regarding plaintiffs' property, since plaintiffs had not yet complied with the requirement to submit "at least one meaningful application for a variance," *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005), that would permit them to develop their property notwithstanding the challenged zoning ordinances. *See Woodmere I*, 2022 WL 17359339, at \*6 (observing that "perhaps the zoning regulations *and allowed variances* will permit productive use of the property" (emphasis added)). Such a variance application is necessary to ripen claims of this type, because "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel." *Murphy*, 402 F.3d at 348.

Since my decision in *Woodmere I*, plaintiffs have "filed variance applications with Lawrence and Woodsburgh seeking permission to develop residential lots . . . where such lots are presently prohibited by the [challenged zoning]." Pls.' Opp'n at 15. Plaintiffs contend that both defendants have denied the variance applications, thus "commit[ing] to a final position" regarding plaintiffs' use of their property. *Id.* Defendants respond by arguing that plaintiffs' variance

applications were "sham submission[s], unsupported by any of the materials that would allow a . . . determination in their favor." Lawrence Mot. at 20–21. Defendant Woodsburgh further argues that it has, in fact, not yet decided plaintiffs' variance application, as the Woodsburgh Board of Zoning Appeals' most recent action was to "continue[] the underlying hearing pending submission of [an] impact statement," which plaintiffs have not submitted. Woodsburgh Mot. at 10.

Bearing in mind my obligation at this stage to draw all reasonable inferences in favor of plaintiffs, I find that, as alleged, they have satisfied their burden to submit meaningful variance applications to both defendants and that both variance applications have been denied. *See* Compl. ¶¶ 341–43. Although defendants contend that plaintiffs' variance applications were not meaningful, they cite no authority holding that an application is not "meaningful" just because it lacks certain supporting evidence sought by defendants. *Cf. BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 604 (2d Cir. 2024) (observing that plaintiffs' premature withdrawal of their application for a variance rendered it less than meaningful). Moreover, plaintiffs allege that they submitted "all the materials required for a completed application . . . including a 'full' or 'long form' environmental assessment form." Compl. ¶ 349. Given the facts alleged, I am compelled to find that plaintiffs have availed themselves of all available opportunities to obtain administrative relief.

As defendants note, in addition to "requesting variance relief," "appealing [the denial of a variance] to the Zoning Board of Appeals" is also a "necessary prerequisite[] to ripeness." Woodsburgh Mot. at 7 (quoting *BMG Monroe I, LLC*, 93 F.4th at 601). I find, based on the public records the parties have presented and of which I take judicial notice, that plaintiffs sought relief from the boards of appeals in both defendant villages, which both boards denied. *See* Lawrence Mot., Ex. D (decision and hearing transcript from the Lawrence Board of Zoning Appeals); *id.*,

Ex. E (hearing minutes from the Woodsburgh Board of Zoning Appeals).  The Lawrence Board of Zoning Appeals explicitly voted to deny plaintiffs' appeal. *Id.*, Ex. D at 8. The Woodsburgh Board of Zoning Appeals ("Woodsburgh Board"), on the other hand, resolved "that the public hearing on the Proposed Action [be] continued without date pending submission of a Draft Environmental Impact Statement [DEIS]." *Id.*, Ex. E at 17. Defendant Woodsburgh argues strenuously that submission of a DEIS—that is, a document "that analyze[s] the environmental consequences of each and every component of the project," Compl. ¶ 23—is required for plaintiffs to "complete their application." Woodsburgh Mot. at 10. Plaintiffs have stated that they do not intend to submit a DEIS, Pls.' Opp'n at 16, and contend that, "since more than 62 days have elapsed" since the Woodsburgh Board's last hearing, their appeal has been "denied as a matter of law," *id.* (citing N.Y. Village Law § 7-712-a(8), (13)(b)). I do not fault the Woodsburgh Board for deciding it needed plaintiffs to submit a DEIS before it could adjudicate plaintiffs' appeal. I note, however, that plaintiffs' complaint alleges that they have already spent "almost two years and nearly $2 million" to prepare a DEIS for their intended development, which they submitted to the NCPC in 2020. Compl. ¶¶ 23–24. It is therefore reasonable to infer—as, at this stage of the litigation, I must—that the dispute between plaintiffs and the Woodsburgh Board is not truly over the submission of a DEIS, but rather over the merits of plaintiffs' variance application. I conclude that the Woodsburgh Board's decision continuing the hearing "without date," Lawrence Mot., Ex. E at 17, bears sufficient "indicia of finality" to constitute a final denial of plaintiffs' application, and thus to render plaintiffs' claims ripe, *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 298 (2d Cir. 2022).

In addition, defendants argue that plaintiffs' claims are still not yet ripe because plaintiffs' land use application for a 59-lot subdivision remains pending before the Nassau County Planning

Commission (NCPC). *See* Lawrence Mot. at 18; Woodsburgh Mot. at 5–6. This argument is unavailing. As I previously noted, the existence of the pending application for a 59-lot development before the NCPC "is not dispositive of the ripeness issue." *Woodmere I*, 2022 WL 17359339, at *6 n.1. Plaintiffs' claims against defendants are premised on the contention that the challenged zoning ordinances are unlawful because they "take[] away Plaintiffs' ability to develop 80% of the acreage" on which plaintiffs wish to build. Compl. ¶ 5. Therefore, to ripen their claims, plaintiffs needed to "exhaust[] the variance process," *Murphy*, 402 F.3d at 348, in order for me to be able to ascertain that the challenged zoning would indeed affect plaintiffs in the way that they allege. In contrast, the 59-lot application now pending before the NCPC was specifically tailored to *comply* with the challenged zoning. *See* Compl. ¶¶ 338–40. Thus, whether the NCPC approves or denies the pending application will not affect whether the challenged zoning constraints remain in place. Either way, plaintiffs will be permitted to develop, at most, the 59 lots "left to them" by the challenged zoning. *Id.* ¶ 340; *see Pakdel*, 594 U.S. at 479 (noting that "[o]nce the government is committed to a position, . . . the dispute is ripe for judicial resolution"). For these reasons, I conclude that plaintiffs' claims are now ripe for adjudication.

## II.    Joinder of Necessary Parties

I turn next to defendants' argument that plaintiffs' complaint must be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join the Town of Hempstead as a defendant. *See* Lawrence Mot. at 43; Woodsburgh Mot. at 19. Both defendants argue that Hempstead is a necessary and indispensable party to this suit on the grounds that Hempstead (1) was a party to plaintiffs' first suit in *Woodmere I*; (2) "is one of the three contractual parties to the challenged [intermunicipal agreement]"; (3) "is a majority stakeholder by geographical area" in the challenged zone; and (4)

"is central to Plaintiffs' factual allegations." Lawrence Mot. at 43. As I will proceed to explain, these arguments are without merit.

Rule 19 requires me first to determine whether Hempstead is a necessary party to the action under either of two standards. *Viacom*, 212 F.3d at 724. A party is necessary if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Alternatively, a party is necessary if "that person claims an interest relating to the subject of the action" and proceeding without that person would either "impair or impede" the protection of that interest or "leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). Under either standard, Hempstead is not a necessary party here. First, Hempstead's absence poses no obstacle for me to accord complete relief among the existing parties, so Hempstead cannot be a necessary party under Rule 19(a)(1)(A). As plaintiffs correctly note, I "can grant the relief sought by Plaintiffs without the presence of Hempstead," and, if defendants are found liable for damages, "they are . . . free to file their own third-party claim against Hempstead for contribution or indemnity." Pls.' Opp'n at 51–52. Nor is Hempstead a necessary party under Rule 19(a)(1)(B). As the Second Circuit has held, "the plain language of Rule 19(a)(1)(B) requires the absentee to 'claim an interest' in the litigation. *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996)). Moreover, "the absent party must be the one claiming the interest. . . . A party named in the litigation cannot assert the interest on the absent party's behalf." *Cont'l Cas. Co. v. Am. Home Assur. Co.*, No. 05-CV-7874, 2008 WL 1752231, at *4 (S.D.N.Y. Apr. 14, 2008). Since Hempstead has not claimed any interest in this litigation, it cannot be a necessary party within the meaning of Rule 19(a)(1)(B).

Even if Hempstead had claimed an interest in this action, I would still find that it is not a necessary party under Rule 19, because adjudication of this case would neither impair or impede Hempstead's ability to protect its interest, nor subject it to the risk of inconsistent obligations. "Courts often conclude that the suit will not impair or impede an absentee's interests if the absentee's interests are adequately represented by an existing party." *Fed. Ins. Co.*, 758 F. Supp. 2d at 258. Here, defendants Lawrence and Woodsburgh are present and vigorously defending the challenged zoning that was established pursuant to the intermunicipal agreement, making the very same arguments that Hempstead, if it were a party here, would presumably make. And, while "[i]t is well-established that a party to a contract which is the subject of the litigation is considered a necessary party," *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) (citations omitted), plaintiffs' claims in this litigation do not require interpretation of any contract, and there is therefore no risk of inconsistent interpretations causing prejudice to Hempstead's interests.

For these reasons, I reject defendants' arguments for dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(7).[4] I will thus move on to address defendants' remaining arguments for dismissal under Rule 12(b)(6), taking each set of plaintiffs' claims in turn.

## III.    Plaintiffs' Equal Protection Claim

Defendants argue that plaintiffs' first cause of action, which arises under the Equal Protection Clause, should be dismissed for failure to state a claim, under either the "selective enforcement" or the "class of one" theory of harm. *See* Lawrence Mot. at 26–31; Woodsburgh Mot. at 12–14. As I will explain, I agree with defendants and find plaintiffs' arguments to the

---

[4] Because I conclude that Hempstead is not a necessary party to this action under Rule 19(a), I need not analyze whether it would also be an "indispensable" party under Rule 19(b). *See Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 137 (E.D.N.Y. 2000).

contrary unpersuasive. *See* Pls.' Opp'n at 19–26. I therefore grant defendants' motion to dismiss with regard to plaintiffs' equal protection claim.

First, I agree with defendants that plaintiffs have not made out a selective enforcement claim, because they have failed to allege that defendants' challenged actions resulted from an impermissible motive. *See Vertical Broad., Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 390 (E.D.N.Y. 2000) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) ("The 'key issue' in an equal protection claim alleging selective enforcement is impermissible motive.")). Plaintiffs' complaint does contain a passing reference to "animus," insinuating that defendants' actions may have been motivated by plaintiffs' religion or state of residence. *See* Compl. ¶ 310. But elsewhere in the complaint, plaintiffs allege that defendants' "true motives" were "to find any way possible to prohibit as much development as possible for as long as possible." *Id.* ¶ 9. Assuming that allegation to be true, as I must, "there is no allegation that the actions—as arbitrary or irrational as they may have been—were motivated by a constitutionally impermissible consideration." *Payne v. Huntington Union Free Sch. Dist.*, 101 F. Supp. 2d 116, 119 (E.D.N.Y. 2000). Rather, plaintiffs have merely alleged that defendants have a strong and, in plaintiffs' view, irrational opposition to development on plaintiffs' land. This is not enough to make out a claim of selective enforcement, which requires plaintiffs to allege "an intention to discriminate based upon impermissible considerations, such as race or . . . a malicious or bad faith intent to injure the person." *Vertical Broad.*, 84 F. Supp. 2d at 390.

Nor have plaintiffs successfully made out an equal protection claim under their "class of one" theory, as they have failed to identify any similarly situated comparator who was treated differently by defendants. As the Second Circuit has held, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare

themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Although the question of "whether parties are similarly situated is a fact-intensive inquiry" generally best suited for the jury, I may find in a defendant's favor and dismiss a class of one claim "where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." *Id.* Here, plaintiffs' complaint has identified four purported comparator properties. *See* Compl. ¶ 306 (listing four "Comparator Golf Clubs"). But plaintiffs have failed to allege that any of those properties was sufficiently similar to their own. Although the complaint alleges that all of the comparators, like plaintiffs' property, were in use as golf clubs when defendants adopted the challenged zoning, *see id.* ¶ 308, it does not contain any allegation that any of the comparator properties are, or ever were, slated for residential development of the kind plaintiffs hope to construct. This is fatal to plaintiffs' class of one claim because, "in the land-use context, to be prima facie similar, the comparators must be engaged in the same type of land use." *Clubside*, 468 F.3d at 160 (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1314–15 (11th Cir. 2006)); *see also Campbell*, 434 F.3d at 1314–15 (noting, since the plaintiffs in that case sought to build an apartment complex, that "only developers who sought approval of *apartment* building plans could be considered similarly situated"). Plaintiffs intend to convert their property into a residential development, whereas the comparator golf clubs do not. This difference is enough for me to find that no reasonable juror could find plaintiffs' property and the proffered comparator properties to be similarly situated. Consequently, I must dismiss plaintiffs' first cause of action.

## IV.   Plaintiffs' Takings Claims

Plaintiffs assert three causes of action under the Takings Clause: one alleging a "temporary taking," another alleging a permanent "taking of property," and a third claim that alleges an unconstitutional "exaction." *See generally* Compl. ¶¶ 370–413; Pls.' Opp'n at 26–38. Defendants

argue for dismissal of all three of these claims. *See* Lawrence Mot. at 31–34; Woodsburgh Mot. at 16–18. For the reasons that follow, I find that plaintiffs have successfully made out all three of their takings claims, and I therefore deny defendants' motion to dismiss as to plaintiffs' second, third, and fourth causes of action.

### A. Plaintiffs' permanent takings claim

Plaintiffs allege, in their third cause of action, that defendants' actions "violate the constitutional takings clauses both as applied and on their face." Compl. ¶ 384. Defendants seek dismissal of this claim on the grounds that plaintiffs "cannot plausibly claim the [challenged zoning] has rendered their . . . property nearly valueless." Lawrence Mot. at 31; *see also* Woodsburgh Mot. at 16. Plaintiffs have asserted two independent bases for their permanent takings claim against defendants. They claim that defendant Lawrence, but not defendant Woodsburgh, has effected "(1) a *per se* taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)," and further claim that both defendants have effected "(2) a taking under *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978)." Pls.' Opp'n at 26–27. I will address these issues in turn, beginning with plaintiffs' theory of a per se, or categorical, taking. I conclude that, under either theory, plaintiffs have successfully made out a plausible claim alleging an unconstitutional taking, and, consequently, I deny defendants' motion as to plaintiffs' third cause of action.

In *Lucas*, the Supreme Court held that "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good . . . he has suffered a taking" for which the Constitution requires compensation. 505 U.S. at 1019. Plaintiffs' complaint alleges that defendant Lawrence, but not defendant Woodsburgh, has effected a per se taking under *Lucas*, because the challenged zoning "has eliminated 100% of the building lots

situated within Lawrence, thereby depriving Plaintiffs of all economically beneficial use of that portion of their Property." Compl. ¶ 396. In response, defendants argue that since, "even under the new zoning, Plaintiffs can still pursue residential development" on *some* of their property, "they cannot allege a categorical taking." Lawrence Mot. at 33. In other words, the parties dispute how to define the extent of the property interest against which the alleged taking should be measured—which is admittedly a "difficult question," as the Supreme Court noted in *Lucas*. 505 U.S. at 1016 n.7; *see also id.* ("When, for example, a regulation requires a developer to leave 90% of a rural tract in its natural state, it is unclear whether we would analyze the situation as one in which the owner has been deprived of all economically beneficial use of the burdened *portion* of the tract, or as one in which the owner has suffered a mere diminution in value of the tract *as a whole*." (emphasis added)). Here, though, because plaintiffs allege a per se taking only by defendant Lawrence, I find defendants' contention—that the proper point of comparison is the property *as a whole*—to be unpersuasive. Considering only the part of the property situated within Lawrence's boundaries, plaintiffs allege that they "are now barred from creating *a single building lot* anywhere within Lawrence's jurisdiction." Pls.' Opp'n at 27. Thus, plaintiffs have sufficiently alleged that defendant Lawrence has forced them to "sacrifice *all* economically beneficial uses" of their property within Lawrence, *Lucas*, 505 U.S. at 1019, thus making out a per se takings claim.[5]

I turn now to plaintiffs' assertion of a non-categorical taking under *Penn Central*, which I find plaintiffs have also sufficiently alleged. In analyzing this type of claim, the Supreme Court

---

[5] Defendants assert that, "[e]ven if the [challenged] zoning completely prohibited residential development, Plaintiffs cannot plausibly allege that [their] 118-acre ocean-front golf course property has no economic value." Lawrence Mot. at 34. Plaintiffs have, however, alleged that the property's history "shows that use . . . as an 18-hole golf course is not economically viable," as it was previously operated as a golf club at a loss of over $1 million per year. Compl. ¶¶ 246–47. Taking these allegations as true, as I am constrained to do, neither party has proposed any economically viable use of the property other than as a residential development.

has instructed the lower courts to consider, inter alia, "[t]he economic impact of the regulation on the claimant," "the extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action." *Penn Central*, 438 U.S. at 124. Plaintiffs contend that the challenged zoning "ma[kes] it economically unfeasible" for plaintiffs to develop their property, Compl. ¶ 392, that it "interferes with and destroys [plaintiffs'] legitimate investment-backed expectations," *id.* ¶ 388, and that defendants achieved these results "intentionally," *id.* ¶ 392. In response, defendants argue that the challenged zoning "did not result in 'one step short of' a complete diminution of the Property's value," which, defendants contend, means no taking has occurred. Lawrence Mot. at 34 (quoting *Lucas*, 505 U.S. at 1019 n.8). They further argue that the challenged zoning "could not have impacted any *reasonable* investment-backed expectations," because, at the time plaintiffs purchased the property, a moratorium on residential development there was in effect. *Id.* at 33–34.

Defendants' arguments on this point are unavailing. Plaintiffs allege that, by adopting the challenged zoning, defendants "decreased the Property's value by at least 80%," Pls.' Opp'n at 28, thereby "forc[ing] Plaintiffs to give up any economic benefit from the vast majority of their property," *id.* at 30. Defendants ask me to read far too much into the "one step short" language that appears in a footnote to the Supreme Court's opinion in *Lucas*. *See Lucas*, 505 U.S. at 1019 n.8 (rejecting the assumption that "the landowner whose deprivation is one step short of complete is not entitled to compensation"). Nothing in that footnote requires plaintiffs to show that the alleged taking leaves them "one step short" of a total deprivation of their property. Later in the same footnote, the Court explained that "[i]t is true that in at least *some* cases the landowner with 95% loss will get nothing, while the landowner with total loss will recover in full." *Id.* In other words, while alleging a very high (e.g., 95%) diminution in value is not *sufficient* to prove a taking,

defendants have cited no authority stating that it is *necessary* for plaintiffs to allege as much for their takings claim to survive dismissal. In addition, defendants' contention that the challenged zoning could not have affected plaintiffs' "reasonable investment-backed expectations" because of the moratorium in effect at the time of purchase, Lawrence Mot. at 34, does not hold water, because the Supreme Court rejected the very same argument in *Palazzolo v. Rhode Island*, 533 U.S. 606, 630 (2001) (holding that the takings claim in that case was "*not* barred by the mere fact that title was acquired after the effective date of the state-imposed restriction" (emphasis added)). Admittedly, the moratorium that was in place at the time plaintiffs purchased the property was similar in purpose to the challenged zoning at issue now—but, notably, the moratorium was ultimately struck down in state court. Pls.' Opp'n at 31–32. Moreover, the former moratorium cannot be considered a background principle shaping plaintiffs' investment-backed expectations, because "a regulation . . . is not transformed into a background principle of the [local] law by mere virtue of the passage of title," nor "by enactment itself." *Palazzolo*, 533 U.S. at 629–30.

For these reasons, I conclude that plaintiffs have made out a claim of an unconstitutional taking, and I therefore deny defendants' motion to dismiss as to plaintiffs' third cause of action.

**B. Plaintiffs' temporary takings claim**

Plaintiffs raise an additional claim, their second cause of action, seeking "damages from Defendants compensating Plaintiffs for the temporary taking . . . of Plaintiffs' Property." Compl. ¶ 381 (citing *First English Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304 (1987)). While, as plaintiffs note, "Defendants' motions do not address" this claim, Pls.' Opp'n at 34, in any event, I find that plaintiffs have successfully made out their claim of a temporary taking. In *First English*, the Supreme Court held that "'temporary' regulatory takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which

20

the Constitution clearly requires compensation." 482 U.S. at 318. Thus, if the government effects a taking, the Takings Clause "requires that the government pay the landowner for the value of the use of the land during this period," even if the taking is ultimately reversed, by judicial action or otherwise. *Id.* at 319.

Plaintiffs' second cause of action seeks damages for a "temporary taking," Compl. ¶ 381, presumably anticipating the possibility that the challenged zoning ordinances could be held invalid, thus turning the alleged permanent taking of plaintiffs' land into a temporary one. Since, as I explained above, plaintiffs have plausibly alleged a *permanent* taking, in the event the challenged zoning is ultimately invalidated as a taking, defendants will be required to compensate plaintiffs for the *temporary* taking up until that date. *See First English*, 482 U.S. at 321 ("[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective."). Therefore, I deny defendants' motion to dismiss plaintiffs' second cause of action.

## C.  Plaintiffs' exaction claim

Plaintiffs further allege, in their fourth cause of action, that, by requiring plaintiffs to set aside most of their property as open space "as a condition on developing what remains of the Property," defendants have imposed an unconstitutional "condition" or "exaction" on plaintiffs' use of their property. Compl. ¶ 408; *see also id.* ¶¶ 401–13. Defendant Lawrence asserts that this claim should be dismissed, because plaintiffs "do not—and cannot—claim [defendants] ha[ve] demanded any payment in exchange for granting a land-use permit." Lawrence Mot. at 34. To the extent Lawrence argues that an exaction can only take the form of a direct demand for a bribe, that argument falls flat. I therefore deny defendants' motion to dismiss this claim.

Under Supreme Court precedent, "the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). Plaintiffs' complaint alleges that, by adopting the challenged zoning, defendants have required plaintiffs "to expend approximately $3 million dollars to install flood mitigation improvements . . . solely for the benefit of [neighboring] residents . . . and not for themselves," Compl. ¶ 403, and that defendants are "forcing Plaintiffs to maintain over 70% of the Property to achieve conservation purposes for the public at Plaintiffs' sole cost," *id.* ¶ 404. Plaintiffs further allege that these requirements have been imposed as "a condition on developing what remains of the Property." *Id.* ¶ 408. Thus, plaintiffs have unmistakably alleged that defendants imposed "an obligation to spend money" on plaintiffs in exchange for the right to develop their property, which, as the Supreme Court has held, constitutes a so-called "monetary exaction[]" that can support a takings claim. *Koontz*, 570 U.S. at 612.

Defendant Lawrence responds by defending the challenged zoning as "an effort . . . to address legitimate environmental concerns." Lawrence Reply at 25. But at this stage of the case, where I must construe plaintiffs' factual allegations as true, the record is not sufficient for me to definitively conclude that "there is a nexus and rough proportionality between the government's demand and the effects of the proposed land use." *Koontz*, 570 U.S. at 599 (internal quotation marks omitted). I therefore deny defendants' motion to dismiss as to plaintiffs' fourth cause of action.

V.      **Plaintiffs' Bill of Attainder Claim**

Defendants argue for dismissal of plaintiffs' sixth cause of action, which alleges that the challenged zoning is an unconstitutional bill of attainder, asserting that "that constitutional provision simply does not apply in this context." Lawrence Mot. at 35; *see also* Woodsburgh Mot. at 18. In response, plaintiffs cite *Achtien v. City of Deadwood*, 814 F. Supp. 808, 818 (D.S.D. 1993), for the proposition that a "city's rescission of [a] building permit may constitute a bill of attainder." Pls.' Opp'n at 46. As defendants note, however, *see* Lawrence Reply at 26, the court in *Achtien* dismissed the plaintiffs' bill of attainder claim, reasoning that the challenged ordinance did not meet the historical, functional, or motivational tests for a bill of attainder, 814 F. Supp. at 818. Likewise, here, I find that plaintiffs have failed to make out a plausible bill of attainder claim. The Supreme Court has "set forth a three factor inquiry for determining whether a statute imposes 'forbidden punishment' under the bill of attainder clause," requiring me to determine "(1) whether the statute falls within the historical meaning of punishment, (2) whether the statute furthers non-punitive goals, and (3) whether legislative history evinces an intent to punish." *ABN 51st St. Partners v. City of New York*, 724 F. Supp. 1142, 1156 (S.D.N.Y. 1989) (quoting *Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 852 (1984)). I find that the challenged zoning ordinances fail all three tests and therefore do not constitute a bill of attainder.

First, "'mere denial of a noncontractual government benefit' [is] beyond the scope of those penalties historically attributed to bills of attainder." *Id.* (quoting *Selective Serv. Sys.*, 468 U.S. at 853). Since "[a]pproval of a building permit . . . is a government benefit to which no inherent entitlement exists," *id.*, defendants' refusal to grant plaintiffs permission to develop their land as they desire cannot meet the historical test for a bill of attainder. Second, although the parties dispute what defendants' true motives in adopting the challenged zoning were, defendants have

proffered numerous alternative justifications for their actions, such as a desire to protect the property's "unique environmental attributes" and "its contribution to local community character," as well as a desire to mitigate "the threats posed to the area by overdevelopment." Lawrence Reply at 16. Since "the challenged ordinances can be reasonably said to further nonpunitive goals," *Selective Serv. Sys*, 468 U.S. at 854, they do not meet the functional test for a bill of attainder, either. Finally, while plaintiffs' complaint contains an allegation that defendants' "long history of frustrating development" on plaintiffs' property "evinces a legislative motivation to punish Plaintiffs," Compl. ¶ 437, plaintiffs also contend that defendants' goal was "to prohibit as much development as possible for as long as possible," *id.* ¶ 9. Defendants' alleged desire to prevent development does not imply a desire to punish plaintiffs. Therefore, plaintiffs have not plausibly alleged that defendants' motivation for adopting the challenged zoning was punitive, and so their claim fails the motivational test for a bill of attainder, too. As a result, I must dismiss plaintiffs' bill of attainder claim.[6]

## VI.   Plaintiffs' State Law Claims

Defendants raise several arguments for dismissal of plaintiffs' seventh, eighth, and ninth causes of action, which arise under New York law. *See* Lawrence Mot. at 36–43; Woodsburgh Mot. at 18–19. As I will explain in more detail below, I find these arguments persuasive. I therefore dismiss plaintiffs' seventh and eighth causes of action, which allege that defendants' actions were ultra vires, for plaintiffs' failure to comply with the procedural requirement to serve a notice of

---

[6] Because I dismiss plaintiffs' bill of attainder claim under Rule 12(b)(6) for failure to state a claim, I do not reach defendants' alternative argument that this claim is barred by the statute of limitations. *See* Lawrence Mot. at 35 (citing *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015)).

claim. I also dismiss plaintiffs' ninth cause of action, which I find to be barred by the doctrine of res judicata.

Plaintiffs' seventh and eighth causes of action allege that the challenged zoning was an ultra vires application of the zoning power, because it "exceed[ed] the proper limits of the zoning power," Compl. ¶ 446, and because it was "an improper effort to enact landmarking legislation through the guise of zoning," *id.* ¶ 453, respectively. Under New York law, a local government's exercise of its zoning power, "to the extent that it is lawful, must be founded upon a legislative delegation to so proceed, and in the absence of such a grant will be held *ultra vires* and void." *Golden v. Plan. Bd. of Town of Ramapo*, 30 N.Y.2d 359, 370 (1972). Defendants seek dismissal of these claims, arguing that (1) plaintiffs failed to allege compliance with New York procedural requirements; (2) these claims are barred by the statute of limitations; and (3) defendants had the power to create the challenged zoning under New York law. *See* Lawrence Mot. at 36–37, 38–40. I find defendants' first argument convincing, and I therefore dismiss these claims without reaching defendants' alternative arguments.

Defendants contend that plaintiffs were obliged to allege compliance with the procedural requirements under New York law to serve a notice of claim and sit for a required statutory hearing. *See* Lawrence Mot. at 36–37; N.Y. C.P.L.R. 9802 (McKinney 2024). I agree. As the Second Circuit has stated, "federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 151 (1988)) (internal quotation marks omitted). Section 9802 of New York's Civil Practice Law and Rules ("CPLR") "sets forth the procedure by which certain actions against villages may be maintained." *Solow v. Liebman*, 573 N.Y.S.2d 710, 711 (2d Dep't 1991). In addition to certain provisions concerning

contract actions, that statute provides that "*no other action* shall be maintained against a village

unless . . . a notice of claim shall have been made and served in compliance with section fifty-e of

the general municipal law." N.Y. C.P.L.R. 9802 (emphasis added). And, as the New York courts

have held, "[t]he 'no other action' language . . . permits no exceptions." *Solow*, 573 N.Y.S.2d at

711 (quoting N.Y. C.P.L.R. 9802). Thus, I find that I am constrained to dismiss plaintiffs' seventh

and eighth causes of action without prejudice, as they have not alleged service of the notice of

claim required by the CPLR.[7]

I turn now to plaintiffs' ninth cause of action, which alleges that the challenged zoning

violated New York's State Environmental Quality Review Act ("SEQRA"). New York's notice of

claim requirements, which I discussed above, would apply to this claim, as they do to plaintiffs'

other state law claims. Regardless, I must dismiss this claim with prejudice, as I find it to be barred

by the doctrine of res judicata. In *Woodmere I*, I adopted Magistrate Judge Shields's finding that

"plaintiffs failed to plausibly allege that defendants violated SEQRA" and dismissed the SEQRA

claim accordingly. *Woodmere I*, 2022 WL 17359339, at *9. Thus, plaintiffs are precluded from

again bringing their SEQRA claim, which appears to be identical to the claim they previously

brought in *Woodmere I. Compare* Compl. ¶¶ 459–64 *with* Compl. ¶¶ 381–86, *Woodmere I*, No.

20-CV-3903 (E.D.N.Y. Aug 24, 2020), ECF No. 1; *see also Brown v. Felsen*, 442 U.S. 127, 131

(1979) (noting that "[u]nder res judicata, a final judgment on the merits bars further claims by

---

[7] New York law does provide for the possibility that plaintiffs may seek to file a late notice of claim. *See* N.Y. Gen. Mun. Law § 50-e(5) (McKinney 2024). However, the statute makes clear that "[*a*]*ll* applications under this section *shall* be made to the supreme court or to the county court." *Id.* § 50-e(7) (emphasis added). Accordingly, I am without jurisdiction to hear these applications. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 424–25 (S.D.N.Y. 2006). Therefore, I dismiss plaintiffs' seventh and eighth causes of action without prejudice, with leave to renew the claims after seeking and obtaining leave in state court to file a late notice of claim.

parties or their privies based on the same cause of action" (citation and internal quotation marks omitted)).[8]

## VII.    Plaintiffs' Due Process Claims

Finally, I turn to plaintiffs' fifth and tenth causes of action, which arise under the Due Process Clause. Defendants argue these claims fail because plaintiffs' complaint "fails to allege a protectable property interest, much less that [defendants] deprived them of such an interest through egregious, conscience-shocking conduct." Lawrence Mot. at 22; *see also id.* at 22–26; Woodsburgh Mot. at 14–16. Plaintiffs contend that they have a "constitutionally protected property interest in the approval of their subdivision application," Pls.' Opp'n at 39, and assert violations of both substantive and procedural due process, *see id.* at 38–46. As I will proceed to explain, defendants are correct, and I therefore dismiss plaintiffs' due process claims.

"To demonstrate a violation of due process rights based upon a zoning decision, whether on procedural or substantive due process grounds, a plaintiff must first demonstrate that he possesses a federally protected property right to the relief sought." *Vertical Broad.*, 84 F. Supp. 2d at 391 (citing *Lisa's Party City*, 185 F.3d at 16). To establish such a protected property interest, the plaintiff must "show a 'clear entitlement' to the relief sought." *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). "A protected property interest will be found only if the degree of discretion afforded the local authority is so narrow that approval is 'virtually

---

[8] Similarly, to the extent plaintiffs seek to raise independent claims under the New York state constitution, these too are barred by the res judicata doctrine. In *Woodmere I*, I adopted the R&R's finding that plaintiffs' "state constitutional claims [we]re either barred by the availability of a federal remedy or subject to the same legal standards as the federal constitutional claims" and thus subject to dismissal. *Woodmere I*, 2022 WL 17359339, at *9. That finding remains binding on me and the parties today, and, therefore, to the extent plaintiffs bring separate claims under the New York constitution, they are dismissed.

assured.'" *Id.* at 392 (quoting *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989)).

Here, I find that plaintiffs have failed to allege that, absent the challenged zoning ordinances, approval of their application to develop their property as they wish would be "virtually assured." *Vertical Broad.*, 84 F. Supp. 2d at 392. In dismissing plaintiffs' prior suit, I held that plaintiffs' "due process claims [we]re unsuccessful due to the discretionary nature of the subdivision approval process." *Woodmere I*, 2022 WL 17359339, at *8. The same is true for plaintiffs' due process claims now. While Plaintiffs argue that defendants have only "conditional" power to deny plaintiffs' subdivision applications, *see* Pls.' Opp'n at 39, it is indisputable that, under New York law, "planning boards are vested with the authority to weigh evidence and exercise their discretion in approving or denying approval of a subdivision plat," *Deepwells Ests. Inc. v. Incorporated Vill. of Head of Harbor*, 973 F. Supp. 338, 349 (E.D.N.Y. 1997). Because defendants possess this discretion, plaintiffs cannot plausibly claim that approval of their plan for the property would be "virtually assured," *Vertical Broad.*, 84 F. Supp. 2d at 392, absent the alleged due process violations. Moreover, "[t]his remains true even if the [challenged] ordinance were to be held invalid," because "[t]he discretion granted [defendants] under the ordinance, even if such discretion was unlawful, prevents plaintiffs from having an expectation of being granted a zoning variance sufficient to rise to the level of a protected property interest." *Id.* at 393. Thus, I hold that plaintiffs have failed to allege a property interest protected by the Due Process Clause, and, accordingly, I dismiss both their substantive and procedural due process claims. *See id.* at 392 (explaining that due process claims "may be dismissed at the outset based upon the lack of a constitutionally protected property interest," "without the necessity of exploring whether the local authority has acted in an arbitrary manner").

**CONCLUSION**

For the foregoing reasons, I grant defendants' motion to dismiss in part and deny it in part. Plaintiffs' claims under the first, fifth, sixth, ninth, and tenth causes of action are dismissed with prejudice. The claims under the seventh and eighth causes of action are dismissed without prejudice. Within seven days of this order, plaintiffs shall inform me whether they intend to seek leave in state court to file a late notice of claim. Should plaintiffs obtain leave from the state court to file a late notice of claim, they may then move for leave to amend their complaint in this action to assert these state law claims. The pending motion for a stay of discovery is denied as moot.

SO ORDERED.

_____ /s/ _____
Allyne R. Ross
United States District Judge

Dated:       September 18, 2024
             Brooklyn, New York