UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WG WOODMERE LLC; SG BARICK LLC; AND LH BARICK LLC,

        *Plaintiffs*,

-against-

THE INCORPORATED VILLAGE OF WOODSBURGH; AND THE INCORPORATED VILLAGE OF LAWRENCE,

        *Defendants*.

23-CV-6966 (ARR) (AYS)

OPINION & ORDER

ROSS, United States District Judge:

This action concerns alleged violations of federal and state law in connection with the rezoning of property located in Woodmere, New York. On September 18, 2024, I issued an order granting in part and denying in part the motions to dismiss brought by defendants, the Incorporated Village of Woodsburgh ("Woodsburgh") and the Incorporated Village of Lawrence ("Lawrence"). *See* ECF Nos. 37–43. Now before me is defendant Woodsburgh's fully briefed motion for reconsideration of my prior order, seeking dismissal of the remaining claims against Woodsburgh as unripe for adjudication. For the reasons set forth below, I deny Woodsburgh's motion.

## BACKGROUND

*Factual Background*

I assume the parties' familiarity with the facts and procedural history of this case. The following factual summary is drawn from plaintiffs' complaint and from my opinion granting in part and denying in part defendants' motion to dismiss. *See* Compl., ECF No. 1; Op. & Order (Sept. 18, 2024), ECF No. 43.

Plaintiffs own a 118-acre parcel of land known as the "Woodmere Club." Compl. ¶¶ 96, 98. The Woodmere Club property is in the jurisdiction of three municipalities: the Town of Hempstead, the Village of Woodsburgh, and the Village of Lawrence. *Id.* ¶ 100. Because of the property's location, it is subject to the planning authority of the municipalities as well as of the Nassau County Planning Commission ("NCPC"). *Id.* ¶ 101. At the time plaintiffs purchased the property, the then-applicable zoning regulations allowed for development of a subdivision plan consisting of 284 single-family residential lots. *Id.* ¶ 111. In December 2018, plaintiffs filed an application with the NCPC for approval to subdivide the property into 284 single family residential lots, in compliance with the zoning regulations of the municipalities. *Id.* ¶¶ 190–91. The NCPC approval process included a review under New York's State Environmental Quality Review Act ("SEQRA"), N.Y. Env't Conserv. Law §§ 8-0101–8-0117 (McKinney 2024). Compl. ¶ 195. As part of the SEQRA review for their proposed development, plaintiffs spent nearly two years and $2 million preparing plans and studies, including a full draft environmental impact statement ("DEIS") analyzing the environmental impacts of the project. *Id.* ¶ 23.

Then, in late 2019 and early 2020, as plaintiffs were moving through the SEQRA process before the NCPC, defendants Lawrence and Woodsburgh, together with the Town of Hempstead, decided to rezone the Woodmere Club property. *Id.* ¶¶ 215–16. In May 2020, defendants introduced the rezoning scheme, called the "Coastal Conservation District – Woodmere Club" (the "challenged zoning"). *Id.* ¶ 225. The challenged zoning significantly reduces the number of lots that plaintiffs can develop compared to the prior zoning regulations, from 284 to 59. *Id.* ¶¶ 236–42.

*Procedural Background*

On August 24, 2020, plaintiffs sued the Town of Hempstead and the Villages of Lawrence and Woodsburgh, asserting that the challenged zoning violated the U.S. Constitution, the New York Constitution, and New York law. *See* Compl., *WG Woodmere LLC v. Town of Hempstead* (*Woodmere I*), No. 20-CV-3903 (E.D.N.Y. Aug 24, 2020), ECF No. 1. On December 1, 2022, I issued an order dismissing plaintiffs' complaint in *Woodmere I* without prejudice. *Woodmere I*, No. 20-CV-3903, 2022 WL 17359339, at *9 (E.D.N.Y. Dec. 1, 2022). In particular, I found that plaintiffs' equal protection and takings claims were not yet ripe, *id.* at *4–7, because there was still "significant ambiguity" as to how exactly the challenged zoning would "actually apply" to plaintiffs' property, *id.* at *6. Subsequent to my order in *Woodmere I*, on February 15, 2023, plaintiffs filed applications with the villages of Lawrence and Woodsburgh, seeking variances that would allow them to construct homes in certain parts of their property. Compl. ¶ 341. Both villages denied those applications, and plaintiffs appealed the denials to each village's respective zoning board of appeals in April 2023. *Id.* ¶ 343.

On September 20, 2023, plaintiffs filed the complaint in the instant action against defendants, the villages of Lawrence and Woodsburgh (but not the Town of Hempstead), again asserting claims under the federal and New York constitutions, as well as New York law. *See* Compl. ¶¶ 360–475. As relevant here, plaintiffs allege that the challenged zoning is an unconstitutional taking because, by reducing the permitted number of residential lots from 284 to just 59, it "takes away Plaintiffs' ability to develop 80% of the acreage" that they seek to develop. *Id.* ¶ 5. In July 2024, defendants moved separately to dismiss. *See* ECF Nos. 25, 26. On September 18, 2024, I issued an order granting in part and denying in part defendants' motion to dismiss. Specifically, I found that plaintiffs' claims under the Takings Clause were ripe for adjudication

3

and sufficiently pled to survive dismissal, but I dismissed the remainder of plaintiffs' claims. *See* Op. & Order at 1–2; *see also id.* at 10 (finding plaintiffs' takings claims to be ripe because, as alleged, plaintiffs "satisfied their burden to submit meaningful variance applications," thereby "avail[ing] themselves of all available opportunities to obtain administrative relief"). Subsequently, defendant Woodsburgh filed this timely motion for reconsideration, which is now fully briefed. *See* Def. Woodsburgh's Mem. Supp. Mot. Reconsideration ("Def.'s Mot."), ECF No. 48; Pls.' Mem. Opp'n Mot. Reconsideration ("Pls.' Opp'n"), ECF No. 49; Def. Woodsburgh's Reply Supp. Mot. Reconsideration ("Def.'s Reply"), ECF No. 52.

## LEGAL STANDARD

"The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re Salomon Winstar Litig.*, No. 02-CV-6171, 2006 WL 510526, at *1 (S.D.N.Y. Feb. 28, 2006) ("Reconsideration . . . is appropriate only where there is an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice."). Such a motion "should not be granted where the moving party seeks . . . to relitigate an issue already decided," *Shrader*, 70 F.2d at 257, or seeks "to advance new issues or theories of relief that were not previously presented to the court," *Mahadeo v. N.Y.C. Campaign Fin. Bd.*, 514 F. App'x 53, 55 (2d Cir. 2013).

## DISCUSSION

Nearly four decades ago, the Supreme Court set forth the ripeness requirements that apply in takings cases like this one. As the Court explained, a takings claim that challenges a

4

governmental regulation—such as the zoning regulations at issue here—"is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, 588 U.S. 180 (2019). More recently, the Supreme Court has commented that "[t]he finality requirement [under *Williamson County*] is relatively modest." *Pakdel v. City & Cnty. of San Francisco, Cal.*, 594 U.S. 474, 478 (2021). To meet the requirement, "[a]ll a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Id.* (alterations adopted and internal quotation marks omitted). Here, of course, the "regulations at issue" are the challenged zoning ordinances, which allegedly reduce the number of developable lots by approximately 80 percent (from 284 to 59). Compl. ¶ 5.

Moving for reconsideration of my prior order, Woodsburgh again argues that plaintiffs' claims remain unripe, for at least two reasons. First, Woodsburgh argues that plaintiffs' claims are not ripe because plaintiffs have not completed the administrative process under SEQRA, the New York statute governing environmental review. *See* Def.'s Mot. at 5 ("Completion of the SEQRA review process . . . is a required predicate to any determination on [plaintiffs'] application."). Second, Woodsburgh argues that it has yet to reach a final decision on plaintiffs' application because the most recent hearing before the Woodsburgh Board of Zoning Appeals ("Woodsburgh Board") "was continued pending [plaintiffs'] submission of" a full draft environmental impact statement, or DEIS. *Id.* As I explain in further detail below, I find Woodsburgh's arguments to be meritless.

## I. Despite the Pending SEQRA Review Process, There Is No Question as to How the Challenged Zoning Applies to Plaintiffs' Property.

Woodsburgh argues that, to ripen their claims, plaintiffs must complete the entire environmental review process, as contemplated by SEQRA, before the Nassau County Planning Commission ("NCPC"). *See* Def.'s Mot. at 3 (asserting that "[t]he environmental review process was never even completed" because plaintiffs never filed a final environmental impact statement ("FEIS"), and because the NCPC has yet to adopt a "SEQRA findings statement"). This argument does not withstand scrutiny. Woodsburgh fails to explain why those procedural steps must take place prior to judicial review of plaintiffs' claims in this action, and the *Williamson County* ripeness doctrine imposes no such requirement. Under *Williamson County*, the key question is whether the defendant—here, Woodsburgh—"has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186. As I discuss further in the following section, Woodsburgh has reached just such a final decision by denying plaintiffs' appeal to the Woodsburgh Board.

Although plaintiffs' complaint does not clearly allege as much, Woodsburgh asserts that plaintiffs "have decided to hold [the] next SEQRA steps in abeyance." Def.'s Mot. at 7. Even assuming that assertion to be true, it does not render plaintiffs' claims unripe. If plaintiffs were to plow ahead with the SEQRA review process before the NCPC, the challenged zoning would still prevent plaintiffs from developing most of their land. Presumably, this is the very reason why plaintiffs have put the SEQRA process on hold: They have no hope of progressing further in the review process because the challenged zoning specifically precludes them from developing most of the lots where they seek to build homes. Woodsburgh's argument might hold water if plaintiffs were challenging some decision made *by the NCPC*, or some action taken *during the SEQRA process*, but they are not. Plaintiffs are challenging the zoning adopted by *defendants*, which, they

6

allege, constitutes an unconstitutional taking without compensation. The only question, therefore, is whether Woodsburgh has reached a final decision as to how the challenged zoning will affect plaintiffs' land. I turn to that question in the section that follows.

### II. Woodsburgh Has Made a Final Decision.

As I explained in my prior order, Woodsburgh has denied plaintiffs' application for a variance as well as their subsequent appeal of that denial to the Woodsburgh Board of Zoning Appeals. *See* Op. & Order at 10–11. In its motion for reconsideration, Woodsburgh repeats the argument that it has not yet made a final decision, because at the most recent hearing on May 23, 2024, the Woodsburgh Board voted only to continue the hearing "pending the applicant's submission of a DEIS." Def.'s Mot. at 5. This argument is without merit.

As Woodsburgh notes, SEQRA undisputably "mandates the preparation of [a DEIS] when a proposed project may have a significant effect on the environment." *Id.* (quoting *Vill. of Tarrytown v. Planning Bd.*, 741 N.Y.S.2d 44, 48 (2d Dep't 2002)) (internal quotation marks omitted). But plaintiffs have already prepared a DEIS, spending two years and nearly $2 million to do so. Compl. ¶¶ 23–24. Seeking to justify its demand for a second, brand-new DEIS, Woodsburgh proffers a variety of explanations. *See* Def.'s Mot. at 4. Some of these purported explanations relate to changes that have allegedly taken place since the first DEIS was prepared. *See id.* (referring, inter alia, to "significant climate changes" and "changes in driving patterns").[1] But the other reasons given by Woodsburgh are more telling. For instance, Woodsburgh asserts that a second DEIS is necessary because "use variances are required" for plaintiffs' development. *Id.* Obviously, plaintiffs need variances from Woodsburgh's zoning regulations to be able to build

---

[1] Even assuming that such changes have occurred, Woodsburgh fails to explain how it is necessary for plaintiffs to prepare a wholly new DEIS to address them.

7

their development—indeed, that is the relief plaintiffs sought from the Board in the first place. *See* Compl. ¶¶ 341–43. Even if plaintiffs were to spend additional years and millions of dollars preparing a new DEIS, they would still need Woodsburgh to grant them use variances—variances which, to date, Woodsburgh has shown no sign that it will ever be willing to grant. On this record, there is simply no reason to believe that if plaintiffs redid their $2 million DEIS from scratch, Woodsburgh would be convinced to reverse itself and grant the requested variances. Thus, it appears that Woodsburgh's demand for a second DEIS is largely a pretext and perhaps even a deliberate effort to delay this federal court proceeding. Under these circumstances, Woodsburgh's arguments ring hollow.

Moreover, even if Woodsburgh's demand for a second DEIS had been justified, I would still find that Woodsburgh has reached a final decision to deny plaintiffs' application for a variance and their subsequent appeal, due to the application of section 7-712-a of the New York Village Law. That statute, which sets forth procedures for village boards of zoning appeals in New York, states in relevant part that "if an affirmative vote of a majority of all members of the board is not attained on a motion or resolution to grant a variance . . . within [sixty-two days of the hearing of the appeal], the appeal is denied." N.Y. Village Law § 7-712-a(13)(b) (McKinney 2024). Since more than sixty-two days have elapsed since the Board's hearing on May 23, 2024, the plain language of the Village Law establishes that plaintiffs' appeal has been denied. The decision in *New York SMSA Ltd. Partnership v. Town of Riverhead Town Board*, 118 F. Supp. 2d 333 (E.D.N.Y. 2000), on which Woodsburgh relies, is inapposite. In that case, the court held that, despite the passage of sixty-two days after the hearing, the defendant's issuance of a "positive SEQRA determination"—that is, a request for a DEIS to be prepared—was "not a final agency action" ripe for judicial review. *Id.* at 338, 342. That case is distinguishable, however, because

8

there the plaintiff was seeking review of the positive SEQRA determination *itself*, before preparing a DEIS. Here, in contrast, plaintiffs, who have already prepared a DEIS, seek to challenge defendants' zoning regulations. Therefore, in the absence of any authority to the contrary, I find that plaintiffs' appeal was denied as a matter of law by the passage of sixty-two days, pursuant to section 7-712-a of the New York Village Law.[2]

To reiterate, the *Williamson County* ripeness doctrine requires plaintiffs to show only that defendant Woodsburgh has reached "a final decision regarding the application of the zoning ordinance . . . to [plaintiffs'] property." *Williamson Cnty.*, 473 U.S. at 186. Plaintiffs have made that showing. To be clear, it is not Woodsburgh's decision to request a DEIS that is the "final decision" at issue here. Plaintiffs are challenging Woodsburgh's decision to adopt the challenged zoning *in the first place*. Seeking to ripen their claims, plaintiffs sought a variance from the zoning regulations, which Woodsburgh denied. Plaintiffs appealed that denial, and, as I explained above, Woodsburgh denied their appeal. Thus, Woodsburgh has reached a final decision: No variance having been granted, the challenged zoning precludes plaintiffs from developing most of their property into residences. Under the *Williamson County* doctrine, plaintiffs' takings claims are therefore ripe for judicial review.

### III. Plaintiffs' Request for Fees Is Denied.

In their opposition to Woodsburgh's motion, plaintiffs ask me to impose sanctions on Woodsburgh by awarding plaintiffs their attorneys' fees pursuant to 28 U.S.C. § 1927. *See* Pls.' Opp'n at 5–6. As the Second Circuit has stated, "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have

---

[2] Woodsburgh notes the existence of this statutory provision but asserts that it only applies when "a board's tie vote results in a default denial upon the passage of 62 days." Def.'s Mot. at 8. That is not what the statute says, and Woodsburgh has provided no basis for its interpretation.

been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "[A]n award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power." *Id.* Here, the record does not conclusively indicate that Woodsburgh's counsel acted in bad faith, nor that the filing of the instant motion was "undertaken for some improper purpose such as delay." *Id.* Thus, although I find Woodsburgh's arguments to be unavailing, I decline to impose sanctions on Woodsburgh's counsel under 28 U.S.C. § 1927.

## CONCLUSION

For the foregoing reasons, defendant Woodsburgh's motion to reconsider is DENIED. Plaintiffs' request for costs and attorneys' fees is also DENIED.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:  October 30, 2024
        Brooklyn, New York