This Settlement Agreement dated the 4th day of December, 2025 ("Agreement"), by and between: WG Woodmere LLC, SG Barick LLC, and LH Barick LLC, as owners ("Owners") of premises located at 99 Meadow Drive, Woodmere, New York, consisting of the following lots as designated on the Nassau County Land and Tax Map: Section 41, Block F, Lots 37, 40, 48, 123, 310, 3028, 3029, 3030, 3032; Section 41, Block D, Lots 53, 55; and Section 41, Block 72, Lot 1 (the "Premises"), portions of which are located in the Town of Hempstead ("Hempstead" or the "Town"), the Village of Lawrence ("Lawrence"), and the Village of Woodsburgh ("Woodsburgh," and together with Lawrence, the "Villages," and together with the Owners and the Town, the "Parties," and individually each a "Party"),

## RECITALS

WHEREAS, in December 2019, after roughly a year of study and public input, Woodsburgh adopted a comprehensive plan entitled the Woodsburgh Vision Plan providing for inclusion of zoning and land use methods to preserve and protect environmentally sensitive areas, and

WHEREAS, in January 2020, the Villages, together with the Town, entered into an Inter-Municipal Agreement providing for cooperative planning and use regulations (the "IMA"), and

WHEREAS, in June 2020, the Town and the Villages adopted respective zoning regulations relating to the portions of the Premises within their respective geographical jurisdictions titled Coastal Conservation District – Woodmere Club ("Woodmere Club Zoning Regulations"), and

WHEREAS, after the adoption of the Woodmere Club Zoning Regulations, the Owners commenced litigation against the Villages and the Town challenging the respective Woodmere Club Zoning Regulations.in the United States District Court for the Eastern District of New York, styled and captioned *WG Woodmere LLC et al* v. *Town of Hempstead et al*, 2:20-cv-03903-ARR-AYS, which action was dismissed, and subsequently commenced a new litigation captioned *WG Woodmere LLC et al* v. *The Incorporated Village of Woodsburgh et al*, 2:23-cv-6966-ARR-AYS (the "Litigation") in which Owners asserted claims against the Villages, the Town, the County of Nassau (the "County"), the Nassau County Planning Commission (the "NCPC"), and the Nassau County Department of Public Works (the "NCDPW") in connection with the adoption of the Woodmere Club Zoning Regulations, including claims under the United States and New York State Constitution for compensation in excess of $200 million, applications to the Villages and NCPC for subdivision approval and applications to the Villages and Town for variances ("Claims"), and

WHEREAS, the Parties have agreed to resolve the Owners' Claims on the terms set forth herein so as to reduce the cost, burden and expenses to them associated with the Litigation and the Claims; and

WHEREAS, as further described herein, and as presented by way of summary, the parties have resolved and agreed that the Premises shall be developed with a 34 acre

age-restricted, 155 unit condominium development, 83+ acres of land preserved as open space in the Town and Villages, land utilized as golf course property to be acquired by another golf club or open space, and retention of the clubhouse building, tennis courts and other existing structures (the "Project"). The age-restricted development within the Project shall provide for units requiring an owner and occupant to be at least 55 years of age, associated recreational improvements including a pool, outdoor patios, tennis courts and pickleball courts, with primary access via Broadway and secondary access for limited use purposes via Meadow Drive (the "Residential Project"), and

WHEREAS, the Residential Project and the areas reserved for open space preservation shall be subject to deed restrictions as provided herein, and

WHEREAS, the Parties recognize that various approvals may be necessary predicates to effectuate the terms of this settlement, including, *inter alia*, actions to be taken by the Villages with respect to the IMA in respect of a proposed zone change (which has already been completed), zone change approval by the Town Board as described herein, site plan approval from the Town Board, variance approval from the Town Board of Zoning Appeals, subdivision approval from the Village Planning Boards, subdivision approval from the NCPC, Condo Major Subdivision from the NCPC and concurrent subdivision approval or a waiver, if available, from the Villages and the Village of Cedarhurst, and the Municipalities intend to expeditiously process such applications within their respective jurisdictions as provided herein, and

WHEREAS, the settlement agreement does not purport to resolve or mandate any approvals by jurisdictions or boards not party to this agreement, including the Village of Cedarhurst and the Town Board of Zoning Appeals or authorize any Municipality or the NCPC to take any action contrary to law, including any law mandating environmental review, and

WHEREAS, the Parties wish to enter into this agreement, setting forth the terms, conditions, responsibilities and obligations of the Parties, and seek the Court's assistance with effectuating this agreement,

NOW, THEREFORE, in consideration of the promises herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties, the Parties agree to the following terms and conditions:

1. <u>Incorporation of Recitals.</u>  The foregoing recitals are incorporated as if fully set forth at length herein and made a part hereof.

2. <u>Exhibits.</u>

   Exhibit A –    Concept Site Plan dated 06/18/2025 (the "Residential Plan")

   Exhibit B -    Lot A & Lot B Plan

   Exhibit C – Intentionally Deleted

   Exhibit D –    Survey of the Woodmere Country Club

   Exhibit E -    4 Lot Subdivision South of Keene

   Exhibit F -    3 Lot Subdivision South of Keene

3. <u>Residential Project Component.</u>

   a. The Residential Project shall include the following site elements and improvements:

      i. Improvements, setbacks, buffer areas and roadway dedications in substantial conformance with the Residential Project, with specific thresholds and details as identified herein (where the Residential Project conflicts with the details herein, the details apply),

      ii. Residential Project shall permit 155 age-restricted units,

      iii. 2 main 3-story residential buildings over a parking level, connected by a 2 story clubhouse building,

         1. It is understood that the parking level (which shall include amenities but no residential units) shall not count as a story so long as it is underground in the front of the building along Broadway.  There is a possibility that the Town Building Department may categorize this parking level which is below ground floor along Broadway but exposed in the rear of the building as an additional floor.

      iv. A building height not exceeding 46 feet in height, based on the Town's definition of height,

      v. Parking located under the residential component of the buildings and at-grade parking in the locations shown on the Residential Plan,

3

vi. The residential unit size shall be limited such that the total square footage of all the residential units in the Residential Project shall not exceed 352,000 net sellable square feet. For the avoidance of doubt, the maximum net sellable square footage shall not include outdoor patios, common areas, amenities, hallways, parking spots, elevators, outdoor spaces, and structural components.

vii. Clubhouse building may contain an indoor pool, community room, resident-only (with guests) dining, resident-only (with guests) club room, gym, and spa, provided that all such facilities are never used for commercial purposes or as commercial catering facilities for non-residents or non-guests. For sponsored and hosted charitable and fundraising events, such events shall be limited to a maximum of 50 non-resident guests.

viii. Outdoor space to accommodate patios, pool, pergolas and/or gazebos, tennis courts and pickleball courts (configured in substantial conformance with the Residential Plan), walking paths, driveways and parking areas. The tennis and pickleball courts shall conform to the applicable Hempstead laws.

ix. 2-proposed ingress and egress driveways along Broadway corresponding with the intersections of Linden Street and Prospect Avenue, with the understanding that any determinations or requirements from the NCDPW or any governmental agency with jurisdiction over such improvement shall govern.

x. 1 proposed limited use ingress and egress driveway along Meadow Drive providing for limited and restricted access and egress corresponding with the Porter Place intersection as further described herein,

xi. Minimum Building setback from Broadway and Meadow Drive of not less than 150 feet,

xii. 150 foot minimum building setback from the abutting lots in the Village of Cedarhurst,

xiii. Landscaping buffer along Broadway and the neighboring Cedarhurst properties a minimum of 75 feet from Broadway and the Cedarhurst properties. The landscaping buffer shall include a 5 foot high landscaping berm planted parallel to Broadway and the neighboring Cedarhurst properties with evergreen shrubs at a planted height of at least 10 feet tall on top of such berm.

4

xiv.   Landscaping buffer along Meadow Lane located 75 feet from the Meadow Drive boundary.  The landscaping buffer shall include a 5 foot high landscaping berm planted parallel to Meadow Drive with evergreen shrubs at a planted height of at least 10 feet tall on top of such berm,

xv.   Owners shall offer all abutting homeowners a 50 foot use easement on the Property, so long as the homeowner agrees to maintain such easement and it is able to be provided along their property line.  If the homeowner agrees to maintain such easement, the homeowner must build and maintain a fence along the property line that connects with the fence constructed pursuant to Section 4(c) of this Agreement.  If any homeowner does not agree to maintain such easement or build a fence at their own expense, Owners shall not grant any easement to such homeowner(s) and Owners shall retain ownership of and maintain the area(s) abutting such homeowner's property,

xvi.   Outdoor amenities shall be for use only by residents and their guests,

xvii.   The dining areas and club room shall be for residents only and not to be open to non-residents (other than as guests accompanying residents).

1.   On-site events or parties shall be for residents and their guests only and no commercial events are permitted.  For sponsored and hosted charitable and fundraising events, such events shall be limited to a maximum of 50 non-resident guests.

xviii.   It is understood that the location of the building, outdoor amenities and improvements shown on the Residential Plan are subject to change by Owner, provided that any such changes do not conflict with this Agreement, subject to the Town's site plan approval.

xix.   For a period not longer than three (3) years from receipt of building permit to construct the Residential Project, Owners may use the former pro-shop as a sales office for the sales of the Residential Project units and upon the conclusion of the three (3) year period, shall cease using the pro-shop building for any commercial purpose.

b.   To assure compliance with the age-restricted project proposal, the Residential Project shall permit 155 age-restricted units, subject to the following minimum restrictions (which shall be included in deed

restrictions running to the favor of the Town and Villages, and subject to modification only upon approval of the Town and Villages), subject to the following thresholds and conditions:

    i. At least one (1) owner must be 55 years of age or older. For all non-owner-occupied units, at least one (1) occupant must be 55 years of age or older.

    ii. No resident may be younger than 18 years of age except that such individual may reside in the Residential Project for no more than ninety (90) days in any calendar year,

    iii. The total maximum parking spots sold and/or assigned shall be 320 total parking spots.

    iv. Owners shall comply with HUD verification rules regarding minimum age of an owner, including providing for initial age verification upon sale or transfer of a unit and annual certification of compliance with such requirement.  Copies of verification reports to be provided to the Town or Villages upon request. The HOA documents, including the Declaration and if appropriate the by-laws shall include substantial penalties, as determined by the HOA, but not less than $5,000 for each such violation,

    v. A unit owner may only rent a unit if the rental period is not less than 180 consecutive days and the owner and renter certify compliance with the age requirements, including that at least one resident be 55 years or older and no resident under 18 years of age, except that such under-18 individual may reside in the Residential Project for no more than ninety (90) days in any calendar year,

    vi. No unit may be used for commercial or business purposes that include any outside patients/customers/employees to be at the premises,

c. The Residential Project shall include the following operational conditions, provisions for access, roadway dedication, and landscape buffer elements and thresholds:

    i. The Owners agree to dedicate 10 feet of property running along the Broadway border, running to a point corresponding with the eastern terminus of the eastern property egress/ingress along Broadway, or if an acceleration lane is required by the County NCDPW for such eastern egress, to the point corresponding with the eastern terminus of such acceleration lane.  The dedication shall extend no further east and in no event closer than 200 feet from the corner of Broadway and Meadow and shall not include

land to be used for a present or future turning lane onto Meadow Drive.  It is understood that, subject to NCDPW approval, any lane expansion for acceleration purposes shall merge onto Broadway no closer than 200 feet from the corner of Meadow and Broadway and shall not include or become a turning lane onto Meadow. In the event the requirements of the NCDPW or any governmental agency with jurisdiction over such improvement conflict with the above, NCDPW or such government agency, as applicable, shall govern.

ii.  The Owners agree that there shall be no parking lots or spaces on the north side of the buildings within 150 feet of Meadow.  Any on-grade parking in the rear of the condominium building shall be no less than within 525 feet of Meadow, as shown on the Residential Plan.  The Owners also understand that the parking spaces on the south side of the buildings are proposed solely to comply with the Town's minimum parking requirements and should a variance be obtained by the Owners or the HOA to permit a reduced parking requirement, Owners and/or the HOA shall first eliminate the parking spaces on the south side of the building

iii.  The parties agree that upon agreement by Woodsburgh a 10 foot strip along the west side of Meadow Lane may be used for a walking path, but not for any widening of Meadow Lane or a sidewalk,

iv.  The parties agree that upon request by Woodsburgh, in connection with flood mitigation improvements, the Owners of Lot 1 on Exhibit E shall grant an easement to Woodsburgh of a 10 foot strip along Ivy Hill Road and/or an underground 10 foot strip from Ivy to the Woodmere basin (location to be mutually agreed upon),

v.  Regarding the Meadow Drive access – As proposed by Owners, use of the Meadow entrance for ingress access is intended for limited and emergency use.  Owners shall install and maintain an arm-gate to be setback a minimum of 25 feet from the Meadow Drive property line, with access permitted through security/concierge only and shall not provide for any electronic, magnetic or fob-type entry. This access shall also be controlled by a security camera for HOA-hired security access. Broadway shall be the primary delivery location for the Residential Project. It is understood that some delivery and services shall be accessed via the Meadow entrance. Egress shall be limited to left-turns only,

7

    vi. Except as provided herein, Broadway shall be the only construction entrance and exit and no construction vehicles shall utilize Meadow Drive as an ingress or egress point. Notwithstanding the foregoing, in the limited circumstances where it is commercially unreasonable for an element of construction to be serviced and/or accessed via Broadway, Owners may utilize Meadow Drive for ingress and/or egress to or from the premises for this limited purpose, after first providing advance notice to Woodsburgh and the Town identifying the date on which such access is necessary and planned, to the extent reasonably possible,

    vii. In the event any construction vehicle, in connection with work by such vehicle relating to the Residential Project, causes damages to any roadway in the Villages, Owners shall restore the roadway to the condition it was in immediately prior to such damage,

    viii. Valet parking service will be included and provided, and shall be accessible only via Broadway,

    ix. The on-site parking spaces shall only be used by residents and their guests, and shall not be used to park vehicles associated with any off-site location, including the clubhouse property,

    x. The tennis courts and pickleball courts will not have lighting.

4. <u>Open Space Preservation (portion of property north and south of Keane Lane).</u>

    a. The portion of the areas identified as open space shown in Lot B of Exhibits B shall be preserved as open space.

    b. The condominium HOA shall be perpetually responsible for the maintenance of Lot A and B on Exhibit B, except areas that have been granted an easement to neighbors.

    c. The open space areas depicted on Lot A and B on Exhibit B shall remain in private ownership, accessible only by the Owners and residents of the Residential Project, with a 6 foot high (or less) fence surrounding the open space to restrict access to the public.

    i. Owners shall erect an aluminum estate style fence around the perimeter of Lot A in Exhibit B, and continue such fencing down Meadow Drive up until the corner of Meadow/Keane, provided that same is consistent with Town Code. To the extent any fencing is located in Woodsburgh, it shall conform to the Woodsburgh Code.

8

d. Within 60 days of receiving all necessary approvals to submit for a building permit to construct the Residential Project, and all outside agency approvals, Owners shall deed restrict Lot B on Exhibit B to include at least the following language:

    i. "This Property shall be deed restricted to prohibit all construction of buildings and structures of any kind. It is intended for this Property to remain open space now and forever, which such open space purposes may include the "Open space purposes" defined in Title 59, Section 3 of the Miscellaneous Laws of Nassau County. This deed restriction is for the benefit of the Town and Villages with sole authority to permit a modification of the deed restriction running to the favor of the Town and Villages and requiring joint approval by the Town or Villages before any permitted modification."

        (a) It shall be understood that the property designated as Lot B on Exhibit B shall be deed restricted providing that it shall be preserved and maintained as vacant land for now and forever, which such open space purposes may include the "Open space purposes" defined in Title 59, Section 3 of the Miscellaneous Laws of Nassau County for the benefit of the Town and Villages. Owners shall apply to the Industrial Development Agency (IDA) or other applicable authority for a tax abatement or exemption, and the Town shall not oppose such application. In the event property taxes are levied on Lot B, Lot B may be conveyed to a not-for-profit entity owned by the HOA. All maintenance requirements shall remain with the HOA.

    ii. It is agreed that Lot B shall be maintained in the following manner:

        (a) The area located in Hempstead shall be maintained with mowed grass, along with landscaped areas kept in a manicured manner by the HOA.

        (b) The area located in Lawrence and Woodsburgh shall have the areas within 150 feet of the neighbors planted with grass (except for the berm and landscaping on top of the berm) and

9

maintained in a manicured manner by the HOA. The areas not within 150 feet of the neighbors shall be landscaped and maintained by the HOA.

(c)     A fence, at a height not to exceed Hempstead's regulations, but in no event higher than 6 feet. The perimeter of the property shall be secured and monitored by the HOA. The fencing shall be maintained in good condition. Cameras shall be installed along the perimeter of the property but shall not be required to be live-monitored. Motion-detecting cameras such as "trail cameras" shall be acceptable, provided that such cameras do not interfere with Sabbath observance.

(d)     Lot B shall be used only by the Residential Project's residents and invited guests and shall be private property, monitored by the HOA.

(e)     Owners acknowledge that Lawrence and Woodsburgh may adopt zoning regulations, including modifications to, or replacement of its Coastal Conservation District, to provide for the restricted use of lot B as described herein. In no event shall any law in such zone conflict with any terms of this agreement or add any additional requirements or costs not listed herein. It is the intent that such zoning regulation shall establish Lot B as open space.

e.  The condominium HOA shall be perpetually responsible for the maintenance of Lot 1 on Exhibit E unless Woodsburgh and the Owners agree to require Woodsburgh or owner of Lot 2 on Exhibit B to replace the responsibilities of the condominium HOA as it relates to the maintenance of this Open Space.

5.     Clubhouse Site/Property south of Keane Lane Development (references to lots herein are based on the lot configurations in Exhibit E and F, which can be changed upon agreement of the Parties so long as the modification is consistent with the intent herein).

a.  Lot 2 on Exhibit E shall be permitted to be conveyed for use as a synagogue and other uses. Except as otherwise provided in 5(b) and in accordance with an agreement between the Owner and Woodsburgh, Lot 1 on Exhibit E shall remain open space in perpetuity

10

and shall be owned by either, the Owners of Lot 2, the Village of Woodsburgh or a conservation entity.  The Village of Woodsburgh shall inform the Owners in writing, which entity shall own Lot 1, 15 days before the earlier of (1) the conveyance of Lot 2 or (2) four months from the execution of this Agreement.

b. The northerly portion of Lot 1, the size of which will be subsequently determined, shall be subject to the deed restriction prohibiting any temporary or permanent structure, but shall not be subject to the open space in perpetuity restriction as noted in paragraph 5(a) above.  This northerly portion may be used for parking purposes, subject to approval by Woodsburgh in accordance with existing laws and shall be determined to accommodate necessary additional parking for the synagogue use, parking aisles and a landscaped buffer area to mitigate potential impacts to residential properties on Ivy Hill Road

c. Owners agree to include the following requirement in the purchase and sale agreement of the clubhouse (Lot 2): "The purchaser of the clubhouse from the Owners ("Clubhouse Purchaser") shall maintain at least three (3) tennis courts at all times for the benefit of Woodsburgh residents. The Clubhouse Purchaser shall treat Woodsburgh residents equal with their own members in all respects related to the tennis courts, including, but not limited to, access and fees."

    i. In the event the Owners continue the Litigation pursuant to any provision of this Agreement permitting them to do so, the Owners shall have the right to remove the condition set forth in paragraph 5(c) above.

6.    Town Expert Fees

a. Upon the adoption of a resolution of the Town Board approving the Zone Change (as hereinafter defined) and within thirty (30) days of the Town's delivery of notification of the amounts due, such notification shall include copies of all invoices due for payment, the Owners shall pay all expert fees incurred by the Town associated with the Zone Change including but not limited to fees paid to attorneys, engineers and consultants relating to the Town's SEQR review;

b. Upon issuance of the Town's site plan approval and within thirty (30) days of the Town's delivery of notification of the amounts due, such notification shall include copies of all invoices due for payment, the Owners shall pay all expert fees incurred by the Town associated with the application for site plan approval, including but not limited to fees paid to attorneys, engineers and consultants.

7. <u>Community Impact Fee.</u>

   a. The Owners agree to provide a community impact fee to the Town in the total amount of $800,000 payable as follows:

      i. $400,000 within one hundred and twenty (120) days of the Town Board's vote approving the zoning change;

      ii. $400,000 within one hundred and twenty (120) days upon receipt of Site Plan Approval.

8. Project Steps.  The Project requires the following approvals/steps:

   a. Villages and Town – coordination in accordance with the IMA to permit zoning changes to permit the development.  This has already been completed.

   b. Town – adoption of a zone change to rezone the portion of the Premises in the Town from Coastal Conservation to the CA zoning district ("Zone Change"). The Zone Change approval shall be subject to the terms of this agreement in relation to the proposed Project.

   c. Town – Board of Appeals approval to permit a 46 foot high building.

   d. Town – site plan pursuant to the Town Building Zone Ordinance.

   e. Villages and County – subdivision approval to permit the lots to be developed as shown in Exhibits A, B, and E, subject to modification of lot lines as agreed upon by the Owners and Municipality with jurisdiction so long as consistent with the intent of this agreement.

   f. Villages – concurrent subdivision for portions of property located within 300 feet of their boundaries.  In addition, the Villages may adopt zoning regulations to provide for the property uses identified in this agreement.

   g. County – Condo Major Subdivision approval.

   h. Town – building permits for the building and units.

   i. SEQRA compliance.

9. Deed Restrictions.

   a. Each of the restrictions herein shall be made part of a deed restriction filed by the Owners with the Nassau County Clerk, at the times identified herein and subject to review and approval as to form by the attorney for the municipality who benefits from the restriction as noted below.

b.  Within 60 days of obtaining all necessary approvals to submit for a building permit to construct the Residential Project, and all outside agency approvals, the property depicted in Lot A of Exhibit B, Owners shall record a deed restriction providing for relevant operating restrictions identified in paragraph 3(a), (b) and (c) above.  These restrictions also must be included in the Offering Plan and Bylaws of the Condominium with no ability for the Board to change in the future without obtaining approval from the Municipalities.

c.  Within 60 days of obtaining all necessary approvals to submit for a building permit to construct the Residential Project, and all outside agency approvals, the entirety of the property depicted in Lot B of Exhibit B (open space property north and east of Keane Lane) Owners shall record a deed restriction containing the following restrictions:

   i.  "This Property shall be deed restricted to prohibit all construction of buildings and structures of any kind.  This deed restriction is for the benefit of the Town and Villages and shall run to the favor of the Town and Villages with no modifications permitted except as approved by the Town and Villages".

d.  Within 60 days of obtaining all necessary approvals to submit for a building permit to construct the Residential Project and all outside agency approvals, with respect to Lot 4 depicted in Exhibit E, Owners shall record a deed restriction containing the following restrictions:

   i.  "This Property shall be deed restricted to prohibit all construction of buildings and structures of any kind.  This deed restriction is for the benefit of the Village of Woodsburgh and shall run to the favor of the Village of Woodsburgh with no modifications permitted except as approved by the Town and Villages".

   ii.  Lot 4 also may be conveyed to an adjoining country club for use as part of golf course property subject to the aforesaid restriction with respect to construction.

   iii.  Lot 4 shall be maintained in perpetuity by the owner of Lot 4 in a manner consistent with the Village of Woodsburgh property maintenance requirements and any applicable NYS Department of Environmental Conservation regulations.

e.  Upon the later of: (i) 60 days of obtaining (a) site plan approval, and (b) the subdivision approval in Exhibit E, so long as the Property has been subdivided as shown on Exhibit E, Owners shall record a deed restriction on Lot 2 as depicted in Exhibit E, containing the following restrictions:

13

i. The use of the property shall be for a synagogue, it being understood that such use and any related or other uses shall be in compliance with Woodsburgh code requirements and shall not be in conflict with any provisions of this Agreement.

ii. Any ballroom, party room, other event room old or new, shall have a maximum occupancy of 356 people (based on the current permitted maximum occupancy),

iii. The pool and lockers may be removed subject to compliance with any Woodsburgh demolition requirements and DEC requirements,

iv. If parking areas are to be constructed in addition to the existing parking areas, those areas shall comply with DEC requirements and shall be fully screened from other properties on Ivy Hill Road and shall be constructed to accommodate any building expansion in accordance with the Woodsburgh Code, which such building expansion may not be closer to Ivy Hill Road than the existing building,

v.  No party shall establish or operate a school on the premises. The synagogue may, however, provide programs and activities for its members and their children. The parties acknowledge that certain use limitations (ie., catering) would be better addressed as part of a municipal special permit process.  In this regard, the property shall be used and maintained in accordance with lawful Village Code provisions.

f. Within 60 days of obtaining all necessary approvals to submit for a building permit to construct the Residential Project, and all outside agency approvals, Owners shall record a deed restriction containing the following restrictions with respect to lot 1:

i. Except as set forth in paragraph f(ii) below, Lot 1 designated on Exhibit E, which lot includes the property previously identified as the 18th hole, shall also include the following deed restriction: "Except as otherwise provided herein, this Property shall be deed restricted to prohibit all construction of permanent and temporary buildings and structures of any kind, and the lot shall not be used for residential or commercial purposes. The northerly portion of the Property may be developed with parking spaces and parking aisles to accommodate additional parking spaces, parking aisles and a landscape buffer area along Ivy Hill Road as part of any Woodsburgh approval of the use of the northerly abutting lot for religious worship purposes. This deed restriction is for the benefit of the Village of Woodsburgh and

14

shall run to the favor of the Village of Woodsburgh with no modifications permitted except as approved by the Village of Woodsburgh,"

g. Within 60 days of obtaining all necessary approvals to submit for a building permit to construct the Residential Project, and all outside agency approvals, Owners shall record a deed restriction for Lot 3 as shown on Exhibit E containing the following restrictions:

  i. "This Property shall be deed restricted to prohibit all construction of buildings and structures of any kind.  This deed restriction is for the benefit of the Village of Woodsburgh and shall run to the favor of the Village of Woodsburgh with no modifications permitted except as approved by the Village of Woodsburgh."

  ii. Lot 3 shall be maintained in perpetuity by the owner of Lot 3 in a manner consistent with the Village of Woodsburgh property maintenance requirements and any applicable NYS Department of Environmental Conservation regulations.

h. Notwithstanding anything in Sections 9 (d), 9 (e), 9 (f) and 9 (g), if within two years from the date of this Agreement, Woodsburgh has not subdivided the Property per Exhibit E, or effectuated a different subdivision mutually agreeable to both Owners and the Village of Woodsburgh, the Owners shall not be required to record the deed restrictions on Lots 1, 2, 3, 4 on Exhibit E.

i. The Parties agree that  even if a subdivision is not granted  per Section 9 (h) above, within 60 days of obtaining all necessary approvals to submit for a building permit to construct the Residential Project, and all outside agency approvals, Owners shall record a deed on the property South of Keene containing the following restriction:   "No party shall establish or operate a school on the premises.  The synagogue may, however, provide programs and activities for its members and their children."

10.  Municipal Approval Process.

  a. In connection with the various application processes, where the respective Municipality has jurisdiction, the Municipality represents and warrants that, at all times during the application processes set forth above, including subdivision approval and Building Permit to start construction of the Project,  including but not limited to completing the required SEQRA procedures, rendering a determination on the application in a timely fashion after completion of the predicate procedures and the public hearing on the preliminary and final subdivision approval, that the Municipality shall perform any statutorily

required review process their respective building departments, engineering departments, attorney's offices and any other relevant department of each Municipality, shall cooperate in good faith with Owners in their prosecution of their applications and shall make themselves available, upon reasonable notice, for meetings and consultations with Owners, their architects, engineers and attorneys in order to assist Owners in the expeditious completion of the process and in furtherance of the intent of the parties as set forth in this Agreement. In addition, the Town and Villages represent and covenant that they shall continue to reasonably cooperate with the Owners during construction and through the issuance of the final certificate of occupancy of the Residential Project, including but not limited to the timely review of construction drawings and timely scheduling of all inspections. The Villages shall not oppose, and shall support the grant of the subdivision approval by the NCPC on any application that is consistent with the terms set forth in this agreement and the Residential Project. It being understood that Woodsburgh's request for information from Hempstead or County shall not be in violation of this provision.

b.  The Municipality with jurisdiction over the particular approval process described below shall take such steps as are necessary to ensure compliance with this agreement.

c.  Zone change (Town): The Owners have submitted to the Town an application for a change of zone ("the Re-Zoning Application"), requesting that the Town Board re-zone the Property located in Hempstead from the current zoning district to the Town's "CA Residence" district as set forth in Article X of the Town's Building Zone Ordinance ("BZO"), which application was referred to the NCPC for review under New York General Municipal Law § 239-m and the subject of a public hearing before the Town Board.

   i.   In considering the zone change application, the Town shall comply with all applicable statutes and rules, including review of the application pursuant to the requirements of the State Environmental Quality Review Act (SEQRA) and in adherence to all notice and publication requirements,

   ii.  After completing all predicate hearing, referral and notice requirements, the Town shall render a decision on the application.

   iii. If the Town Boad does not render a final decision on the zone change application by December 9, 2025, the Owners may terminate this agreement, in which case Owners may continue with the Litigation.

16

iv. If the Town Board approves the zone change application, Owners may commence next steps in the application process before the Municipalities, including applications to the Town for a building permit (which will require a variance in respect of the Town's building height regulations in the CA district, and, in the event that the Town determines that the underground parking is considered a story, a four-story variance), a variance application and site plan approval application, to the Villages and NCPC for subdivision approval of the Project, to the Villages and the Village of Cedarhurst for concurrent subdivision approval.

v. The Town Board's Resolution approving the change of zone application shall be conditional upon the County granting approval of the minor subdivision required by § 10(d)(vi) hereof. In the event that the County shall fail to approve the minor subdivision, within sixty (60) days, together with any extensions of time reasonably granted, after the Owners submit application for the minor subdivision, the Resolution approving the change of zone shall be deemed null, void and of no force and effect and the zoning of the property shall revert to the Coastal Conservation District, without prejudice to the parties' existing rights and claims in the Litigation, this Agreement shall be null and void, and Owners shall have the right to continue the litigation against all Parties.

d. Town Board of Appeals application.

i. After Owners file a building permit application, the Town Building Department shall reasonably promptly thereafter, meet with Owners' professionals as needed in order to expedite the filing of the building permit application. The Building Department shall review such application and determine whether it is complete within reasonable time of receipt and shall determine, within 30 days, whether the application requires Owners to seek and secure variances.

ii. If the Building Department determines that Owners must secure variances, the Owners shall file a complete application for the required variances with the Board of Appeals ("BOA") within 60 days of receiving the Building Department notice and shall appear before the BOA on the calendared date.

iii. The BOA application shall include all items required by Hempstead rules and regulation.

iv. The Villages shall not oppose, the application to the BOA so long as the application is consistent with the intent and terms of this agreement.

v. The hearing shall be concluded within 30 days after the BOA determines that the application documentation and testimony is complete. The BOA shall render its decision within 62 days of the closure of the hearing in accordance with the requirements of Town Law § 267-a(8).  The BOA shall refer the application to the NCPC in accordance with the referral requirements in the General Municipal Law, require notice in accordance with the BZO and apply SEQRA, and shall render a determination on the application within 30 days after the conclusion of the hearing and the SEQRA process.

vi. If the variance(s) are approved, Owners shall continue with the next steps in the development process as set forth herein.

vii. If the BOA denies the variances requested by the Owners, or does not vote on the variance application(s) within 180 days of submission by Owners of a building permit application, Owners shall have the right to declare the Agreement null and void, there shall be no settlement of this action, in which case, Owners may continue the Litigation against all Parties.

e. Town Site Plan Application.  The Project requires Town Board site plan approval pursuant to BZO §305.

i. Within 60 days of obtaining variance relief, Owners shall file a complete site plan application, which shall conform to this Agreement.

ii. Subject to the Owners prompt submission of the site plan application, and their timely response to all comments and requests for additional or supplemental information by the Town's Planning Department staff, the Building Department shall immediately commence review thereof. Upon the completion of its review, which shall be completed within 30 days of receipt of all required information, the Building Department shall immediately refer the site plan to the Town Board for placement in its calendar for consideration at the next scheduled Town Board meeting.  In the event the site plan application is not approved by March 1, 2026, Owners shall have the right to terminate this Agreement and in such case, continue the Litigation against all Parties.

iii. If the Town Board places conditions on the site plan application or places conditions on the approval that are unsatisfactory to Owners, Owners shall have the right to withdraw the site plan application. For purposes of this Agreement only, such withdrawal shall be deemed a denial. If Owners withdraw the site plan application or for unsatisfactory conditions or if the Town board denies the application, Owners shall have the right to terminate this Agreement and continue the Litigation against all Parties.

f. Village Subdivision Applications (Woodsburgh and Lawrence).

i. The Villages hereby represent and warrant that they support the intent of this Agreement and that they shall act in good faith and shall undertake any effort necessary, consistent with law and within their jurisdictions, to further its completion and they shall not take any steps to prevent its completion or block any approval or permit necessary for Owners to complete the Project, nor will the Villages instigate, directly or indirectly, any Party or third party to act in bad faith or prevent completion of the Project.

ii. The Project requires subdivision approval from the Villages and if necessary the NCPC, as shown on Exhibit E (hereinafter "Woodsburgh Minor Subdivision Approval"). Assuming that the Owners submit a complete subdivision application as provided in 11(d), such minor subdivision shall be approved by Woodsburgh no later than 10 days after the site plan application has been approved and except as provided in (1) below, shall not occur prior to site plan approval.

1. Notwithstanding the foregoing, if the Owners execute a contract of sale to sell Lot 1 to the current tenant prior to the site plan application approval, the Owners shall submit a three-lot subdivision as shown on Exhibit F and Woodsburgh shall hold a hearing to approve such subdivision previous to the site plan approval, which approval may be conditioned upon completion of the sale.

iii. Regarding Woodsburgh's subdivision review, the Village Code provides for a process including preliminary and final subdivision approval processes. Woodsburgh also has authority to consider preliminary and final subdivision as a single application, and agrees to do so with respect to the four (4) proposed lots in the Village. Any agency having jurisdiction in connection with the

subdivision review shall conduct all appropriate reviews required by all laws, rules and regulations.

    iv.  Regarding Lawrence's subdivision review, a portion of one lot is in Lawrence. Lawrence shall waive any right to review and jurisdiction in connection with any application for subdivision in connection with the lots on Exhibit E.

    v.  The Villages further represent and warrant that the Villages shall provide any and all necessary documentation to the Owners for submission of deeds to the Nassau County Clerk that may be required in order to permit Owners to file and record subdivision deeds in order to complete the process of subdividing the Property as contemplated by this Agreement.

g. Villages' concurrent subdivision jurisdiction.  The Villages agree to grant a waiver of jurisdiction and review for the NCPC minor subdivision and Condo Major Subdivision.

h. NCPC Condo Major Subdivision.

    i.  Owners will submit a condominium subdivision application ("Condo Major Subdivision") in connection with the construction of the Project and the sale of units.

    ii.  The Town shall provide a waiver letter for review of the Condo Major Subdivision.

11.    Settlement of Litigation and Claims.

a. Each of the Municipalities shall be solely responsible for the performance of its/their respective obligations under this Agreement, such obligations shall be several and not joint, and if any Municipality defaults under its/their obligations hereunder such default shall not prevent the dismissal of the Litigation against any of the other Municipalities that do not default hereunder.  For avoidance of doubt, Owners shall have the right to pursue any remedies hereunder solely against the Party or Parties that has/have defaulted in its/their obligations hereunder.

b. Within 30 days of the Town's approval of the Zone Change under Paragraph 10(c), the Owners shall take all steps necessary to discontinue the Litigation without prejudice as against the Town, Lawrence, and Woodsburgh including filing a stipulation of discontinuance without prejudice, and without costs or fees to any party.

c.  Within 30 days of receipt of the Town's resolution of site plan approval, the Owners shall take all steps necessary to discontinue the Litigation as against the Town with prejudice, including filing a stipulation of discontinuance, and shall issue a release to the favor of the Town from all Claims. In the event that Owners' request that the application be withdrawn due to the imposition of conditions unacceptable to Owners, such request shall be deemed a denial of the application.

d.  Within 30 days of receipt of the Town's resolution of site plan approval, Owners shall take all steps necessary to discontinue the Litigation as against Woodsburgh with prejudice, including filing a stipulation of discontinuance with the Court, and shall issue a release in favor of Woodsburgh that releases Woodsburgh from all Claims.

e.  Upon the issuance of the Town's resolution of site plan approval, the claims against Lawrence will be deemed dismissed with prejudice, and Owners shall take all steps necessary to discontinue the Litigation as against Lawrence with prejudice, including filing a stipulation of discontinuance with prejudice, and shall issue a release to the favor of Lawrence from all Claims.

f.  If any third party should commence any action challenging the validity of this Agreement or should bring any action to challenge validity of the new zone or the final approval of a subdivision map by the Planning Boards, the Owners may jointly, along with the Town and Villages, defend any such action, at the sole cost of the Owners. If the Owners are not named as a party to any such action, they shall have the right to seek leave to intervene therein, which the Town and Villages shall not oppose and to which they will consent to fully defend any such action in conjunction with the Town and/or Villages.

g.  If a final, non-appealable order or judgment is issued by a court in an action brought by a third party, which order prevents the Municipalities from issuing any Approvals, then the Municipalities shall thereafter issue Approvals to the extent and in a manner consistent with such final, non-appealable order.

h.  The Parties agree that Plaintiffs' damages will not accrue so long as the Parties are operating under the terms of this Agreement. In the event Plaintiffs reinstate the Litigation or commence any other action relating to or arising from the subject matter of the Litigation, Plaintiffs may not and shall not seek compensation for damages of any kind, costs, or attorney's fees, which were or may have accrued from the effective date of the Agreement to the date of reinstatement or commencement.

i.  In the event any board or agency from any party to this agreement issues a Positive declaration under SEQRA, Owners shall have the

21

option to terminate this agreement and continue the Litigation against all Parties.

j.   The terms of this Agreement including but not limited to the limitations on development of and on the property, as contained in the Residential Project (the "Restrictions") shall run with the land and be applicable to any and all successors, assigns and future owners.  Defendants, at any time after the Zone Change, may record this Agreement.

**WG WOODMERE LLC**

By:_____
    Name: Ekrom Gosman
    Title: arranging member

**TOWN OF HEMPSTEAD**

By:_____
    Name:
    Title:

**SG BARICK LLC**

By:_____
    Name:
    Title: Kenneth Greif
          Manager

**LH BARICK LLC**

By:_____
    Name:
    Title: Larry Horn
          Manager

**VILLAGE OF WOODSBURGH**

By:_____
    Name:
    Title:

**VILLAGE OF LAWRENCE**

By:_____
    Name:
    Title:

25

WG WOODMERE LLC

By:_____
   Name: Efron Constance
   Title: manager mule

TOWN OF HEMPSTEAD

By:_____
   Name:
   Title:

SG BARICK LLC

By:_____
   Name: Kenneth Greif
   Title: Manager

LH BARICK LLC

By:_____
   Name: Larry Horn
   Title: Manager

VILLAGE OF WOODSBURGH

By:_____
   Name: Jake Harman
   Title: Mayor

VILLAGE OF LAWRENCE

By:_____
   Name:
   Title:

25

WG WOODMERE LLC

By:_____
    Name:
    Title:


SG BARICK LLC

By:_____
    Name:
    Title:


LH BARICK LLC

By:_____
    Name:
    Title:


VILLAGE OF WOODSBURGH

By:_____
    Name:
    Title:


VILLAGE OF LAWRENCE

By:_____
    Name: Samuel Nahmias
    Title: MAYOR


TOWN OF HEMPSTEAD

By:_____
    Name:
    Title:


COUNTY OF NASSAU

By:_____
    Name:
    Title:


NASSAU COUNTY PLANNING
COMMISSION

By:_____
    Name:
    Title:


NASSAU COUNTY DEPARTMENT OF
PUBLIC WORKS

By:_____
    Name:
    Title:


25